Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 1 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 1 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 1 of 91



PLEASE RECEIPT AND RETURN

FILED

01 APR 27 PM 3: 57

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

APR 27  4 29 PM '01

1 : 07 CR 598 1

SECRET

JUDGE ECONOMUS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(February 2000 Grand Jury)

'01 CR 1415 BTM

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. _____ |
| Plaintiff, | INDICTMENT |
| v. | Title 18, U.S.C., Sec. 371 - Conspiracy to Commit Wire Fraud, Mail Fraud, Securities Fraud and to Defraud Agencies of the United States; Title 18, U.S.C., Sec. 1343 - Wire Fraud; Title 18, U.S.C., Sec. 1341 - Mail Fraud; Title 18, U.S.C., Sec. 1956(h) - Conspiracy to Commit Money Laundering; Title 18, U.S.C., Sec. 1956(a)(1) (A)(i) - Money Laundering (Promotion); Title 26, U.S.C., Sec. 7206(1) - Filing a False Tax Return; Title 26, U.S.C., Sec. 7201 - Tax Evasion; Title 18, U.S.C., Sec. 982(a)(1) and 1956(a)(1)(B) - Criminal Forfeiture; Title 18, U.S.C., Sec. 2 - Aiding and Abetting |
| MARC DAVID LEVINE (1),<br>JONATHAN EDWARD SHOUCAIR (2),<br>JAMES MICHAEL LEONARD (3),<br>ROBERT HARRY SHIELDS (4),<br>ROBERT TERRANCE HART (5),<br>MARK DARREN McCLAFFERTY (6),<br>EUGENE DONALD EVANGELIST, JR. (7),<br>KENT BOLLENBACH (8),<br>BRENT DOUGLAS MORRIS (9),<br>MICHAEL OWEN GRAYSON (10),<br>JOSEPH ANTHONY MARFOGLIA (11),<br>SYLVAN MORGAN METOYER, III (12),<br>RODNEY SCOTT SHEHYN (13),<br>DAVID ZEIDEL DIAMAND (14),<br>JAMES THOMAS RISSMILLER (15),<br>ANTHONY MATTHEW CASTRIOTTA (16),<br>MARK ALLEN JACONSKI (17),<br>STEPHEN JAMES ROBINSON (18),<br>DANIEL SANDERS (19),<br>RICHARD YORK (20), | |
| Defendants. | |

The grand jury charges:

SAP-DNR:San Diego (cd.rom.asf)
04/26/01

I hereby certify that this instrument is a true and correct copy of the original on file in my office.
Attest: Geri M. Smith, Clerk
U.S. District Court
Northern District of Ohio
By: _____
Deputy Clerk

I hereby attest and certify on 11/21/07
That the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
V. TRUJILLO _____ Deputy

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 2 of 70
Case 1:07-cr-00598-PCE   Document 1-2   Filed 11/26/2007  Page 3 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001   Page 3 of 9

## Introductory Allegations

1. This Indictment alleges violations of federal law committed in connection with the conduct of telemarketing of "high-tech," telecommunications-related investment offerings by an organization (hereinafter "the Enterprise") comprised of the defendants named herein and others known and unknown to the grand jury.

2. As used in this Indictment, the following terms are defined as follows:

    a.   "Telemarketing" means a plan, promotion, or campaign that is conducted to induce (1) purchases of goods and services, or (2) participation in a contest or sweepstakes, by use of one or more interstate telephone calls initiated either by a person who is conducting the plan, program or promotion, or campaign or by a prospective purchaser or contest or sweepstakes participant.

    b.   A "boiler room" is a business which engages in illegal telemarketing, that is, the sale of goods or services or the solicitation of funds by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts, conducted over the telephone. Telemarketing sales of investment opportunities are often conducted by a boiler room described as an "independent sales office" or "ISO";

    c.   In telemarketing sales of investment opportunities, a "pitch sheet" is a script designed to be read over the telephone to a prospective investor. In states such as California, where pitch sheets are required to be registered with the state, the pitch sheets rarely contain blatant misrepresentations and, accordingly, rarely are read verbatim to investors;

    d.   A "rebuttal" is a prepared response to anticipated questions or objections which are often raised by prospective investors after hearing the sales pitch.

    e.   A "prospect representative" or "PR" (also called an "opener") describes an employee of a boiler room who has the initial contact with a prospective investor by telephoning the investor whose name, address, telephone number and other personal information has been supplied as a "lead." "Leads" are obtained by the boiler room/ISO management from commercial "lead brokers" who collect and organize and sell such demographic information. It generally is the PR's responsibility to "qualify" the "lead" by obtaining sufficient information from the investor to determine the investor's

//

2

Case 3:08-cr-07016-BTM   Document 1-2   Filed 03/21/2008   Page 3 of 70
Case 1:07-cr-00598-PCE—   Document 1-2   Filed 11/26/2007   Page 3 of 70
Case 3:01-cr-01415-BTM   Document 1   Filed 04/27/2001   Page 4 of 91

1  financial condition and likelihood of falling for the scheme. A PR will usually use a "pitch sheet" or

2  written script to entice the investor to remain on the telephone and provide information to the PR.

3       f.    A "package request" is made by a PR or other salesperson, through the management of

4  the boiler room/ISO, to the administrative office to send a set of promotional materials, usually a

5  glossy, color brochure, legal memorandum and related information, to a prospective investor by means

6  of the mails and by private, commercial interstate carriers, such as Federal Express.

7       g.    A "phone name" is a false name that a salesperson uses instead of his or her real name.

8  A salesperson may use several different telephone names, thereby allowing the salesperson to contact

9  the investor repeatedly and without the investor knowing the salesperson's true name.

10       h.    A "closer" takes over the contact with a investor after the investor has been qualified,

11  but before the sale has been completed. The closer, who is a more experienced salesperson than the

12  PR, attempts to persuade the investor to invest by using rebuttals or other responses designed to

13  address a investor's skepticism about the investment. In telemarketing sales of investment

14  opportunities, closers are paid commission rates of 15-40% of the gross amount of the sale.

15       i.    A "reload" is a sale to a investor who previously has purchased goods or services from

16  a boiler room. In telemarketing sales of investment opportunities, a reload sale may occur while a

17  particular investment offering is being sold to the public, or it may occur during the sale of a

18  subsequent investment offering by the same boiler room or salesperson.

19       j.    As used in telemarketing sales of investment opportunities, the "load" is the percentage

20  of each investment dollar that is used to pay the overhead and commissions of the project promoter

21  and telemarketer, as compared with the percentage that is dedicated to the project development.

22       k.    A "Telephonic Seller's Registration" is a document required by law to be signed under

23  penalty of perjury and filed with the California Attorney General's Office by the owner(s) of a

24  telemarketing company wanting to do telephonic sales in California, regardless of where that

25  telemarketing company is located. A Telephonic Seller's Registration, which is separate from a

26  license to transact business in the state, must be filed annually in California and it must include

27  specific information concerning the operations of the telemarketing company, including, for example,

28  where it is located; identifying and background information about the owner(s), management and sales

3

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 4 of 70
Case 1:07-cr-00598-PCF    Document 1-2    Filed 11/26/2007    Page 4 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 5 of 91

1    staff; descriptions of the items offered for sale; copies of pitches, materials and literature used by

2    salespersons to induce sales; and, a copy of the surety bond obtained by the telemarketing company.

3    Other states have similar telemarketing seller registration laws.

4    　　　3. The Enterprise's Organizational Structure and Components. The Enterprise existed between

5    approximately July 1994 and approximately September 1998. Between approximately July 1994 and

6    approximately June 26, 1997, it designed, developed and marketed 12 investment offerings, each of

7    which was structured as a purported general partnership. Eight of the offerings were telemarketed

8    primarily by boiler rooms/ISOs in California and four were telemarketed primarily by boiler

9    rooms/ISOs in Florida. The last six of the 12 offerings were also telemarketed by boiler rooms/ISOs

10    in Nevada. As used in this Indictment, the relevant investment offerings and respective Initial and

11    Interim Managing Partners (hereinafter "Initial Managing Partners"), the Enterprise's corporate

12    headquarters, boiler rooms/ISOs, administrative offices, and defendant members of the Enterprise and

13    nominee entities they used are set forth below.

14    　　　a.    General Partnership Investment Offerings and Initial Managing Partners. At all times

15    material to this Indictment, the offerings telemarketed by the Enterprise, which were each described

16    to investors as a "turn-key" operation, included:

17    　　　　　(1) Offerings Telemarketed Primarily in California.

18    　　　　　　(a)  Touch Tone Partners (hereinafter "Touch Tone I") was an offering marketed

19    between approximately July 1994 and approximately January 1995 and purportedly engaged in

20    developing a business to offer 900-number, pay-per-call services to the Public. BMC Enterprises, Inc.

21    (hereinafter "BMC Enterprises") was a corporate entity purportedly engaged in the marketing and

22    management of the Touch Tone I general partnership. About 287 persons nationwide invested

23    approximately $3,906,640 in the Touch Tone I offering.

24    　　　　　　(b)  Touch Tone Communications II (hereinafter "Touch Tone II") was an offering

25    marketed between approximately January 1995 and approximately June 1995 and purportedly engaged

26    in developing a business to offer 900-number, pay-per-call services to the public. Granada Consulting,

27    Inc. (hereinafter "Granada") was a corporate entity purportedly engaged in the marketing and

28    //

4

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 5 of 70

Case 1:07-cr-00588-RCE - Document 1-2    Filed 11/26/2007    Page 5 of 70
Case 3:01-cr-08415-BTM    Document 1    Filed 04/27/2001    Page 8 of 9

1   management of the Touch Tone II general partnership as the Initial Managing Partner.  About 384

2   persons nationwide invested approximately $5,010,000 in the Touch Tone II offering.

3          (c)  Bureau Net (hereinafter "Bureau Net") was an offering marketed between

4   approximately June 1995 and approximately October 1995 and purportedly engaged in developing a

5   business to operate a 900-number, pay-per-call service bureau, in addition to servicing the Touch Tone

6   I and Touch Tone II enterprises. Telelink Management, Inc. (hereinafter "Telelink") was a corporate

7   entity purportedly engaged in the marketing and management of the Bureau Net general partnership

8   as the Initial Managing Partner.  About 331 persons nationwide invested approximately $4,980,000

9   in the Bureau Net offering.

10          (d)  Future Net Partners (hereinafter "Future Net") was an offering marketed

11   between approximately October 1995 and approximately January 1996 and purportedly engaged in

12   developing a business to operate a home shopping mall on the Internet called Future Net Emporium.

13   Future Tech Development Group, Inc. (hereinafter "Future Tech") was a corporate entity purportedly

14   engaged in the marketing and management of the Future Net general partnership as the Initial

15   Managing Partner.  About 360 persons nationwide invested approximately $4,988,873 in the Future

16   Net offering.

17          (e)  Home Net Partners (hereinafter "Home Net") was an offering marketed between

18   approximately January 1996 and approximately August 1996 and purportedly engaged in developing

19   a business to operate a home shopping computer market and merchandise outlet on the Internet called

20   Home Net Shopping. World Net Development Group, Inc. (hereinafter "World Net Dev.") was a

21   corporate entity purportedly engaged in the marketing and management of the Home Net general

22   partnership as the Initial Managing Partner.  About 307 persons nationwide invested approximately

23   $4,485,000 in the Home Net offering.  This offering was also marketed by boiler rooms/ISOs located

24   in Nevada.

25          (f)  Enternet Communications (hereinafter "Enternet") was an offering marketed

26   between approximately August 1996 and approximately March 1997 and purportedly engaged in

27   developing a business to provide Internet access to businesses and individuals in Chicago, Illinois,

28   Detroit, Michigan, and Indianapolis, Indiana.  Enternet 2000, Inc. (hereinafter "Enternet 2000") was

5

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 6 of 70

Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 6 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 7 of 91

1  a corporate entity purportedly engaged in the marketing and management of the Enternet general
2  partnership as the Initial Managing Partner. About 253 persons nationwide invested approximately
3  $4,974,575 in the Enternet offering. This offering was also marketed by boiler rooms/ISOs located
4  in Nevada.

5          (g)  ConnectKom Group (hereinafter "ConnectKom") was an offering marketed
6  between approximately March 1997 and approximately May 1997 and purportedly engaged in
7  developing a business to provide Internet access to businesses and individuals in Seattle, Washington.
8  ConnectKom Services, Inc. (hereinafter "ConnectKom Services") was a corporate entity purportedly
9  engaged in the marketing and management of the ConnectKom general partnership as the Initial
10  Managing Partner. About 86 persons nationwide invested approximately $1,500,000 in the
11  ConnectKom offering. This offering was also marketed by boiler rooms/ISOs located in Nevada.

12          (h)  Intellicom Group (hereinafter "Intellicom") was an offering marketed between
13  approximately May 1997 and approximately June 1997 and purportedly engaged in developing a
14  business to provide Internet access to businesses and individuals in New York, New York. Intellicom
15  Services, Inc. (hereinafter "Intellicom Services") was a corporate entity purportedly engaged in the
16  marketing and management of the Intellicom general partnership as the Initial Managing Partner.
17  About 70 persons nationwide invested approximately $1,005,000 in the Intellicom offering. This
18  offering was also marketed by boiler rooms/ISOs located in Nevada.

19          (2)  Offerings Telemarketed Primarily in Florida.

20          (a)  Link 900 (hereinafter "Link 900") was an offering marketed between
21  approximately June 1995 and approximately October 1995 and purportedly engaged in developing a
22  business to offer 900-number, pay-per-call services to the public. Merging Capital, Inc. (hereinafter
23  "Merging Capital"), was a corporate entity purportedly engaged in the marketing and management of
24  the Link 900 general partnership as the Initial Managing Partner. About 360 persons nationwide
25  invested approximately $4,903,087 in the Link 900 offering.

26          (b)  Teleserve Partners (hereinafter "Teleserve") was an offering marketed between
27  approximately October 1995 and approximately December 1995 and purportedly engaged in
28  developing a business to operate a 900-number, pay-per-call service bureau, in addition to servicing

6

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 7 of 70
Case 1:07-cr-00598-PCE-BTM    Document 1-2    Filed 11/26/2007    Page 7 of 70
Case 3:07-cr-07415-BTM    Document 1    Filed 04/27/2007    Page 8 of 91

the Link 900 enterprise. Protek Holdings, Inc. (hereinafter "Protek Holdings") was a corporate entity purportedly engaged in the marketing and management of the Teleserve general partnership as the Initial Managing Partner. About 171 persons nationwide invested approximately $2,563,734 in the Teleserve offering.

       (c)  Plaza Partners (hereinafter "Plaza Partners") was an offering marketed between approximately January 1996 and approximately June 1996 and purportedly engaged in developing a business to operate an Internet shopping mall called Central Plaza Mall. Net One Consulting, Inc. (hereinafter "Net One") was a corporate entity purportedly engaged in the marketing and management of the Plaza Partners general partnership as the Initial Managing Partner. About 230 persons nationwide invested approximately $6,411,894 in the Plaza Partners offering. This offering was also marketed by boiler rooms/ISOs located in Nevada.

       (d)  I-Net Providers (hereinafter "I-Net Providers") was an offering marketed between approximately June 1996 and approximately October 1996 and purportedly engaged in developing a business to provide Internet access to businesses and individuals in Atlanta, Georgia, Houston, Texas and Philadelphia, Pennsylvania. I-Net Holdings, Inc. (hereinafter "I-Net Holdings") was a corporate entity purportedly engaged in the marketing and management of the I-Net Providers general partnership as the Initial Managing Partner. About 172 persons nationwide invested approximately $4,321,575 in the I-Net Providers offering. This offering was also marketed by boiler rooms/ISOs located in Nevada.

    b.  <u>Corporate Headquarters, Boiler Rooms/ISOs and Administrative Offices</u>. At all times material to this Indictment, the Enterprise's corporate headquarters, boiler rooms/ISOs, and administrative offices were as set forth below.

       (1)  <u>Corporate Headquarters</u>.

       (a)  The control of the Enterprise resided in several promoters, who operated and controlled the Enterprise from a headquarters located in Woodland Hills, California. The promoters operated the Enterprise headquarters under the name of Frontline Consulting, Inc. (hereinafter "Frontline Consulting") and later World Net Consulting Group, Inc. (hereinafter "World Net Consulting"). For some purposes, such as the lease on the headquarters office space, World Net

1  Consulting did business as (hereinafter "dba") Midland & Associates. Under these corporate entities,

2  the promoters designed and developed the investment offerings and located and recruited boiler

3  rooms/ISOs and telemarketers to sell them.

4         (b)  The promoters controlled each of the offerings by creating sales brochures and

5  general partnership agreements, selected "front men" to serve as Initial Managing Partners, and wrote

6  and disseminated pitch sheets and rebuttals and other promotional and marketing materials used by

7  the boiler rooms/ISOs to induce consumers to invest.  To assist them in preparing various legal

8  documents required for the development and marketing of the investment offerings, the promoters

9  engaged the legal services of two California attorneys, identified below.

10         (c)  To prevent the investors and regulatory authorities from learning their role in

11  the organization, the attorneys prepared consulting agreements which did not reflect the promoters'

12  control of the design, development and marketing of the investment offerings and their relationship

13  with the boiler rooms/ISOs.  For the same purpose, these lawyers assisted the promoters in creating

14  the Initial Managing Partner corporations for each investment offering.  To all outward appearances,

15  these Initial Managing Partner corporations and their presidents were in charge of the offerings.  In

16  truth, these companies and their officers were under the control of the promoters and the telemarketers

17  were aware of this arrangement.  The attorneys also assisted the operators of the boiler rooms/ISOs

18  in creating corporate and other business entities which did not disclose their control of and

19  involvement in the fundraising process.

20         (d)  As described below, the promoters were paid their respective shares of the sales

21  proceeds (commissions paid out of investor funds) through Frontline Consulting and World Net

22  Consulting and other sources, including nominees. The attorneys also assisted the promoters and the

23  operators of the boiler rooms/ISOs in creating the corporate and other business entities used for this

24  purpose and the attorneys received, held, transferred and disbursed sales proceeds on their behalf.

25         (2)  <u>Boiler Rooms/ISOs</u>. The interface between the Enterprise and its victims were the

26  numerous boiler rooms/ISOs where telemarketers "cold-called" consumers to pitch their investment

27  offerings. The boiler rooms/ISOs were compensated on a commission basis. Out of each investment

28  dollar received, the boiler rooms/ISOs received 55%-59%, the promoters took approximately 25%,

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 9 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 9 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001    Page 10 of 91

1　and the remainder, typically 15%, sometimes less, was deposited into an account to be paid to the

2　investors at the first partnership meeting.  To induce sales, the boiler rooms/ISOs used standardized

3　pitch sheets and rebuttals, developed and given to them by the promoters from the corporate

4　headquarters. The pitch sheets contained scripted reload presentations to persuade consumers to invest

5　in each successive offering. The Enterprise operated or controlled boiler rooms/ISOs in several states,

6　but primarily in California, Nevada and Florida.  The following boiler rooms/ISOs, among others,

7　telemarketed the investment offerings described above to the public and to persons residing in the

8　Southern District of California and elsewhere.

9　　　　　(a)  Members of the Enterprise controlled and operated the following four boiler

10　rooms/ISOs, among others, in the Los Angeles, California area:

11　　　　　(1)  Brookside Management, Inc. (hereinafter "Brookside") was located in

12　Woodland Hills, California and telemarketed the Touch Tone I, Touch Tone II, Bureau Net, Future

13　Net, Home Net, Enternet, ConnectKom and Intellicom offerings.  Brookside later changed its name

14　to Granite Consulting, Inc. (hereinafter "Granite").

15　　　　　(2)  Lion's Share Ventures, Inc. (hereinafter "Lion's Share") was located in Los

16　Angeles, California and telemarketed the Touch Tone I, Touch Tone II, Bureau Net, Future Net, Home

17　Net, Enternet, ConnectKom and Intellicom offerings.  Lion's Share later changed its name to Selective

18　Ventures, Inc. (hereinafter "Selective"), Networld Consulting, Inc. (hereinafter "Networld") and

19　Perspective Consulting, Inc. (hereinafter "Perspective"), respectively.

20　　　　　(3)  Madison Consulting Group, Inc. (hereinafter "Madison") was located in

21　Canoga Park, California and telemarketed the Touch Tone I, Touch Tone II, Bureau Net, Future Net

22　and Home Net offerings.  Madison later changed its name to Tower Consulting Group, Inc.

23　(hereinafter "Tower") and Venture One, Inc. (hereinafter "Venture One"), respectively.

24　　　　　(4)  M-III Associates, USA, Inc. (hereinafter "M-III Associates") was located

25　in Woodland Hills, California and telemarketed the Enternet and ConnectKom offerings.

26　　　　　(b)  In San Diego, California, members of the Enterprise controlled and operated

27　Livestock Financial Services, Inc. (hereinafter "Livestock"), which  telemarketed the Touch Tone I,

28　Touch Tone II, Bureau Net, Future Net, Home Net, Enternet, ConnectKom and Intellicom offerings.

9

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 10 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 10 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 11 of 91

1 Livestock later changed its name to MediaTech, Inc. (hereinafter "MediaTech") and American Long

2 Distance Corp. (hereinafter "ALD"), respectively. The operators of the San Diego office also had a

3 sales branch in Irvine, California.

4             (c) Members of the Enterprise controlled other boiler rooms/ISOs which operated

5 in Florida under the corporate entity Capital Link Holding, Inc. (hereinafter "Capital Link"), which

6 telemarketed the Link 900 and Teleserve offerings. Capital Link's headquarters was located in Tampa

7 and it operated boiler rooms/ISOs in Tampa (co-located with the headquarters), Maitland (Orlando),

8 Clearwater, Boca Raton and Fort Myers. The Fort Myers sales branch was later converted to an office

9 which performed only administrative functions. Capital Link later changed its name to Twenty First

10 Century Connection, Inc. (hereinafter "TWCCI") which telemarketed the Plaza Partners and I-Net

11 Providers offerings.

12             (d) Members of the Enterprise also controlled and operated the following boiler

13 rooms/ISOs in Nevada:

14                 (1) Money Makers, Inc. (hereinafter "Money Makers") was located in

15 Henderson, Nevada and telemarketed the Plaza Partners, Home Net, Enternet, ConnectKom and

16 Intellicom offerings.

17                 (2) New Age Consultants, Inc. (hereinafter "New Age") was located in Las

18 Vegas, Nevada and telemarketed the Enternet, ConnectKom and Intellicom offerings.

19                 (3) In early 1996, TWCCI opened a branch sales office in Las Vegas, Nevada

20 under the corporate entity Twenty First Connection, Inc. (hereinafter "TWCI"), which later changed

21 its name to Venture One Holdings, Inc. (hereinafter "VOH"), and which telemarketed the Plaza

22 Partners and I-Net Providers offerings.

23             (3) The Administrative Offices. The Enterprise created several corporate entities to

24 coordinate the sales transactions and supply the essential administrative, clerical and logistical support

25 for the organization.

26             (a) In California, the Enterprise operated Prostaff Administrators, Inc. (hereinafter

27 "Prostaff") which operated from various locations in the Los Angeles area to support the promoters,

28 Initial Managing Partners and boiler rooms/ISOs located in California and Nevada which were not part

Case 3:07-cr-00588-PCE-BTM    Document 1-2    Filed 11/26/2007    Page 11 of 70
Case 3:07-cr-08475-BTM    Document 1    Filed 04/27/2001    Page 2 of 91

1  of the Florida sales organization. The Administrative Office shipped promotional materials (usually

2  a glossy, color brochure, legal memorandum, partnership agreement and related information) for the

3  Touch Tone I, Touch Tone II, Bureau Net, Future Net, Home Net, Enternet, ConnectKom and

4  Intellicom offerings to prospective investors at the direction of the boiler rooms/ISOs, collected

5  mailings from investors from numerous "mail drops" the Enterprise used, and collected and deposited

6  the money sent by the investors for each of those offerings. Prostaff later changed its name to Support

7  Staff Administrators, Inc. (hereinafter Support Staff") and All Administrative Services, Inc.

8  (hereinafter "AAS"), respectively.

9          (b)  In Florida, the Enterprise operated Apex Marketing, Inc. (hereinafter Apex

10  Marketing"), which performed the same functions as Prostaff, Support Staff and AAS, except only

11  for the boiler rooms/ISOs operated by Capital Link and TWCCI. Apex Marketing later changed its

12  name to Select Services, Inc. (hereinafter "Select Services") and Marketing Concepts Group, Inc.

13  (hereinafter "MCG").

14      c.  **Enterprise Members - Defendants**.  At all times material to this Indictment, the

15  defendants and others set forth below, among others, were members of the Enterprise.

16          (1)  Defendant MARC DAVID LEVINE (hereinafter "LEVINE") was a promoter,

17  the President of Frontline Consulting, the Secretary of World Net Consulting, and one of the heads

18  of the Enterprise. LEVINE was also a partner with another Enterprise member in a dba called "I on

19  the Marc." LEVINE was involved in all aspects of the design, development and marketing of the 12

20  investment offerings and focused on recruiting new boiler rooms/ISOs and maintaining regular contact

21  with the sales offices concerning their operation. LEVINE was a member of the Enterprise from

22  approximately September 1994 through approximately September 1998.

23          (2)  Defendant JONATHAN EDWARD SHOUCAIR (hereinafter "SHOUCAIR")

24  was a promoter in the Enterprise. SHOUCAIR was also a closer salesperson and operator of Madison

25  and was President of Granada, the Initial Managing Partner of the Touch Tone II general partnership.

26  SHOUCAIR was also one of the operators of Tower. SHOUCAIR was involved in all aspects of the

27  design, development and marketing of the 12 investment offerings and focused on producing pitch

28  sheets, sales scripts, rebuttals and related promotional materials for inclusion in mailings to investors

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 12 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 12 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 13 of 91

1   and for use by the boiler rooms/ISOs.  SHOUCAIR was a member of the Enterprise from

2   approximately September 1994 through approximately September 1998.

3      (3)  Defendant JAMES MICHAEL LEONARD (hereinafter "LEONARD") is an

4   attorney licensed to practice law in California . LEONARD provided legal and business advice and

5   assistance to the Enterprise and its individual members, including, among other things, creating Initial

6   Managing Partner corporations; preparing consulting and other agreements relating to the promoters'

7   control of the design, development and marketing process; changing regularly the corporate names

8   of the Enterprise's corporate headquarters, boiler rooms/ISOs and administrative office, described

9   above; and attending the initial organizational meetings of the general partnerships with the Initial

10  Managing Partners to respond to investor questions about the use of the investment proceeds.

11  LEONARD was a member of the Enterprise from approximately September 1994 through

12  approximately September 1998.

13     (4)  Defendant ROBERT HARRY SHIELDS (hereinafter "SHIELDS") was an

14  owner, officer and director of Capital Link and TWCCI and controlled TWCI and VOH.  While

15  SHIELDS was an owner, officer and director of Capital Link and TWCCI and while he controlled

16  TWCI and VOH, those boiler rooms/ISOs telemarketed the Link 900, Teleserve, Plaza Partners and

17  I-Net Providers offerings.  SHIELDS was a member of the Enterprise from approximately June 1995

18  to approximately December 1996.

19     (5)  Defendant ROBERT TERRANCE HART (hereinafter "HART") was an owner,

20  officer and director of Capital Link and TWCCI and controlled TWCI and VOH.  While HART was

21  an owner, officer and director of Capital Link and TWCCI and while he controlled TWCI and VOH,

22  those boiler rooms/ISOs telemarketed the Link 900, Teleserve, Plaza Partners and I-Net Providers

23  offerings.  HART was a member of the Enterprise from approximately June 1995 to approximately

24  December 1996.

25     (6)  Defendant MARK DARREN McCLAFFERTY (hereinafter

26  "McCLAFFERTY") was a closer salesperson and recruiter for the Enterprise and was also President

27  of Net One, the Initial Managing Partner of the Plaza Partners general partnership. McCLAFFERTY

28  recruited new boiler rooms/ISOs for the Enterprise, including Money Makers operated by defendant

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 13 of 70
Case 1:07-cr-00598-PCE ~  Document 1-2    Filed 11/26/2007    Page 13 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 14 of 91

1   MICHAEL OWEN GRAYSON. McCLAFFERTY also recruited prospective members of the

2   Enterprise to become presidents of Initial Managing Partner companies for the ConnectKom and

3   Intellicom offerings. McCLAFFERTY was a member of the Enterprise from approximately January

4   1996 through approximately June 1997.

5          (7)    Defendant EUGENE DONALD EVANGELIST, JR. (hereinafter

6   "EVANGELIST") was a closer salesperson and an operator of Livestock, MediaTech and ALD. As

7   a closer salesperson, EVANGELIST occasionally used the phone name "Joe Marone."

8   EVANGELIST was a member of the Enterprise from approximately September 1994 to approximately

9   June 1997 and he and the boiler room/ISO he operated telemarketed the Touch Tone I, Touch Tone

10  II, Bureau Net, Future Net, Home Net, Enternet, ConnectKom and Intellicom offerings.

11         (8)    Defendant KENT BOLLENBACH (hereinafter "BOLLENBACH") was a closer

12  salesperson and an operator of Livestock, MediaTech and ALD. BOLLENBACH was a member of

13  the Enterprise from approximately September 1994 to approximately June 1997 and he and the boiler

14  room/ISO he operated telemarketed the Touch Tone I, Touch Tone II, Bureau Net, Future Net, Home

15  Net, Enternet, ConnectKom and Intellicom offerings.

16         (9)    Defendant BRENT DOUGLAS MORRIS (hereinafter "MORRIS") was a closer

17  salesperson and an operator of Lion's Share, Selective, Networld and Perspective. MORRIS was a

18  member of the Enterprise from approximately September 1994 to approximately June 1997 and he

19  and the boiler room/ISO he operated telemarketed the Touch Tone I, Touch Tone II, Bureau Net,

20  Future Net, Home Net, Enternet, ConnectKom and Intellicom offerings.

21         (10)   Defendant MICHAEL OWEN GRAYSON (hereinafter "GRAYSON") was a

22  closer salesperson and operator of Money Makers. GRAYSON was a member of the Enterprise from

23  approximately June 1996 through approximately June 1997 and as a salesperson and boiler room/ISO

24  operator telemarketed the Home Net, Plaza Partners, Enternet, ConnectKom and Intellicom offerings.

25  GRAYSON was solicited by defendants LEVINE and McCLAFFERTY to have the boiler room/ISO

26  he operated market investment offerings designed and developed by the Enterprise.

27         (11)   Defendant JOSEPH ANTHONY MARFOGLIA (hereinafter "MARFOGLIA")

28  was a closer salesperson at Money Makers and the operator of New Age. MARFOGLIA was a

13

Case 3:08-cr-07016-BTM     Document 1-2     Filed 03/21/2008     Page 14 of 70
Case 1:07-cr-00598-PCE -     Document 1-2     Filed 11/26/2007     Page 14 of 70
Case 3:01-cr-01415-BTM     Document 1     Filed 04/27/2001     Page 15 of 91

1   member of the Enterprise from approximately June 1996 through approximately June 1997, and he

2   and the boiler rooms/ISOs at which he was employed and which he operated telemarketed the Home

3   Net, Enternet, ConnectKom and Intellicom offerings.

4          (12)    Defendant SYLVAN MORGAN METOYER, III (hereinafter "METOYER")

5   was a closer salesperson at Granite and operator of M-III Associates.   As a closer salesperson,

6   METOYER used the phone names "Sy Morgan" and "Forest Morgan Green" (hereinafter "FMG").

7   METOYER was a member of the Enterprise from approximately October 1996 through approximately

8   June 1997 and the boiler room/ISO he operated telemarketed the Enternet, ConnectKom and

9   Intellicom offerings.

10         (13)    Defendant RODNEY SCOTT SHEHYN (hereinafter "SHEHYN") was a closer

11  salesperson and manager for Capital Link and TWCCI and a vice-president and manager of TWCI and

12  VOH.   SHEHYN was a member of the Enterprise from approximately June 1995 through

13  approximately December 1996 and as a salesperson and boiler room/ISO manager telemarketed the

14  Link 900, Teleserve, Plaza Partners and I-Net Providers offerings.

15         (14)    Defendant DAVID ZEIDEL DIAMAND (hereinafter "DIAMAND") was a

16  closer salesperson for Brookside and Granite.  As a closer salesperson, DIAMAND occasionally used

17  the phone name "David Rose."  DIAMAND was a member of the Enterprise from approximately

18  December 1994 through approximately June 1997 and as a salesperson telemarketed the Touch Tone

19  I, Touch Tone II Bureau Net, Future Net, Home Net, Enternet, ConnectKom and Intellicom offerings.

20         (15)    Defendant JAMES THOMAS RISSMILLER (hereinafter "RISSMILLER") was

21  a closer salesperson for Lion's Share, Selective, Networld and Perspective.  RISSMILLER was a

22  member of the Enterprise from approximately August 1995 through approximately June 1997 and as

23  a salesperson telemarketed the Bureau Net, Future Net, Home Net, Enternet, ConnectKom and

24  Intellicom offerings.

25         (16)    Defendant ANTHONY MATTHEW CASTRIOTTA (hereinafter

26  "CASTRIOTTA") was a closer salesperson for MediaTech and ALD.  He was also manager of the

27  branch office in Irvine, California.  CASTRIOTTA was a member of the Enterprise from

28  //

14

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 15 of 70
Case 1:07-cr-00598-PCE  ⁻  Document 1-2    Filed 11/26/2007    Page 15 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 16 of 91

1    approximately March 1996 to approximately June 1997 and as a salesperson and boiler room/ISO

2    branch manager telemarketed the Home Net, Enternet, ConnectKom and Intellicom offerings.

3       (17) Defendant MARK ALLEN JACONSKI (hereinafter "JACONSKI") was a

4    closer salesperson for Lion's Share, Selective, Networld and Perspective. JACONSKI was a member

5    of the Enterprise from approximately February 1995 through approximately June 1997 and as a

6    salesperson telemarketed the Touch Tone II, Bureau Net, Future Net, Home Net, Enternet,

7    ConnectKom and Intellicom offerings.

8       (18) Defendant STEPHEN JAMES ROBINSON (hereinafter "ROBINSON") was

9    a closer salesperson for Brookside and Granite. As a closer salesperson, ROBINSON occasionally

10   used the phone name "Steve Bell." ROBINSON was a member of the Enterprise from approximately

11   May 1995 through approximately June 1997 and as a salesperson telemarketed the Touch Tone II,

12   Bureau Net, Future Net, Home Net, Enternet, ConnectKom and Intellicom offerings.

13      (19) Defendant DANIEL SANDERS (hereinafter "SANDERS") was a closer

14   salesperson for Livestock, MediaTech and ALD.   SANDERS was a member of the Enterprise from

15   approximately March 1995 through approximately June 1997 and as a salesperson telemarketed the

16   Touch Tone II, Bureau Net, Future Net, Home Net, Enternet, ConnectKom and Intellicom offerings.

17      (20) Defendant RICHARD YORK (hereinafter "YORK") was a closer salesperson

18   for Livestock, MediaTech and ALD. YORK was a member of the Enterprise during two periods: from

19   approximately December 1994 through approximately May 1995 and from approximately April 1996

20   through approximately June 1997. As a salesperson, YORK telemarketed the Touch Tone I, Touch

21   Tone II, Home Net, Enternet, ConnectKom and Intellicom offerings.

22      (21) Ira Itskowitz (hereinafter "Itskowitz"), charged elsewhere, was a promoter, the

23   Chief Executive Officer of Frontline Consulting, President of World Net Consulting, the long-standing

24   partner of defendant LEVINE, and one of the heads of the Enterprise. Itskowitz was also a partner

25   with LEVINE in I on the Marc.

26      (22) Daniel William Rearick (hereinafter "Rearick"), charged elsewhere, was a

27   promoter in the Enterprise.

28   //

15

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 16 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 16 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 17 of 91

1    (23)    Michael Emerson Lopuszynski (hereinafter "Lopuszynski"), charged elsewhere,

2    was an owner, president, and director of BMC Enterprises (the Initial Managing Partner of the Touch

3    Tone I general partnership) and a promoter in the Enterprise.

4    (24)    Christopher Scott Courtney (hereinafter "Courtney"), charged elsewhere, was

5    an owner, vice-president, and director of BMC Enterprises (the Initial Managing Partner of the Touch

6    Tone I general partnership) and a promoter in the Enterprise.

7    (25)    Michael Anthony Green (hereinafter "Green"), charged elsewhere, was a

8    promoter in the Enterprise who served as the liaison between Frontline Consulting and World Net

9    Consulting and the boiler rooms/ISOs controlled by Capital Link and TWCCI.

10    (26)    Robert Harry Reisner (hereinafter "Reisner"), charged elsewhere, was the

11    bookkeeper/controller for the Enterprise.

12    (27)    Lindsay Wellman (hereinafter "Wellman"), charged elsewhere, was an attorney

13    admitted to practice law in California who served as one of several attorneys who provided legal

14    services to the Enterprise.

15    (28)    Lawrence Francis Long, Sr. (hereinafter "Long"), charged elsewhere, was an

16    owner, officer and director of Capital Link and TWCCI and controlled TWCI and VOH.

17    (29)    Gary Mariarossi (hereinafter "Mariarossi"), charged elsewhere, was a closer

18    salesperson and general sales manager for Capital Link and TWCCI, president of TWCI and VOH and

19    later president of TWCCI.

20    (30)    Timothy David Grayson (hereinafter "T. Grayson"), charged elsewhere, was

21    a closer salesperson and the operator of Brookside and Granite.

22    (31)    Timothy Caswell Traub (hereinafter "Traub"), charged elsewhere, was President

23    of Merging Capital, the Initial Managing Partner of the Link 900 general partnership. Traub was

24    recruited for that position with the Enterprise by defendant LEVINE.

25    (32)    Michael Wilhelm Engelhardt (hereinafter "Engelhardt"), charged elsewhere,

26    was a closer salesperson at BMC Enterprises, Madison and Tower. He was later an operator of

27    Madison and the operator of Tower and Venture One. Engelhardt was also President of Telelink, the

28    Initial Managing Partner of the Bureau Net general partnership.

16

1         (33)    James D. Coffey (hereinafter "Coffey), charged elsewhere, was President of

2 Protek Holdings, the Initial Managing Partner of the Teleserve general partnership. Coffey was

3 recruited for that position with the Enterprise by defendant LEVINE.

4         (34)    Joseph John Widmer (hereinafter "Widmer"), charged elsewhere, was a closer

5 salesperson employed at BMC Enterprises and Madison and a closer salesperson and sales manager

6 at Tower and Venture One. Widmer was also President of Future Tech, the Initial Managing Partner

7 of the Future Net general partnership.

8         (35)    Dennis S. Goddard (hereinafter "Goddard"), charged elsewhere, was a closer

9 salesperson for Lion's Share, Selective, Networld and Perspective.

10         (36)    James Charles Quinn Slaton (hereinafter "Slaton"), charged elsewhere, was

11 President of World Net Dev., the Initial Managing Partner of the Home Net general partnership.

12         (37)    Michael Joseph Coyne (hereinafter "Coyne"), charged elsewhere, was President

13 of I-Net Holdings, the Initial Managing Partner of the I-Net Providers general partnership.

14         (38)    Mark Victor Nachamkin (hereinafter "Nachamkin"), charged elsewhere, also

15 known as "Mark Nash," was President of Enternet 2000, the Initial Managing Partner of the Enternet

16 Communications general partnership. Nachamkin was recruited for that position with the Enterprise

17 by defendant SHOUCAIR.

18         (39)    Paul Evan Perelman (hereinafter "Perelman"), charged elsewhere, was President

19 of ConnectKom Services, the Initial Managing Partner of the ConnectKom general partnership.

20 Perelman was recruited for that position with the Enterprise by defendant McCLAFFERTY.

21         (40)    Mark Ericson (hereinafter "Ericson") was President of Intellicom Services, the

22 Initial Managing Partner of the Intellicom general partnership. Ericson was recruited for that position

23 with the Enterprise by defendant McCLAFFERTY.

24     d.    <u>Previous Regulatory Action</u>.

25         (1) Before and during the period the Enterprise operated, state and federal regulatory

26 or other governmental authorities, including but not limited to the California Department of

27 Corporations (hereinafter "DOC"), the Securities and Exchange Commission (hereinafter "SEC") and

28 //

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 18 of 70

Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 18 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 19 of 91

1 | the Federal Trade Commission (hereinafter "FTC"), took adverse regulatory action against Enterprise

2 | members individually or against the investment offerings they had telemarketed.

3 |      (2) In January 1996, DOC conducted searches of Enterprise boiler rooms/ISOs and

4 | served Desist and Refrain Orders for the sale of unregistered securities against defendants

5 | SHOUCAIR and MORRIS and Lopuszynski, Courtney, Engelhardt, Widmer, T. Grayson and the

6 | following general partnership offerings, Initial Managing Partner companies and boiler rooms/ISOs:

7 | Touch Tone I, BMC Enterprises, Touch Tone II, Granada, Bureau Net, Telelink, Madison, Tower,

8 | Future Net, Future Tech, Brookside and Lion's Share. During March through November 1996, the

9 | SEC deposed members of the Enterprise and others as part of an investigation into the operations of

10 | BMC Enterprises and the Touch Tone I offering.

## Count 1

[Title 18, U.S.C., Sec. 371]
[Conspiracy to Commit Wire Fraud, Mail Fraud, Securities Fraud,
and Conspiracy to Defraud Agencies of the United States]
[All Defendants]

1. Paragraphs 1 through 3 of the Introductory Allegations are realleged and reasserted as if set forth in full herein.

2. Beginning on or about July 1, 1994 and continuing to and including a date unknown to the grand jury, but at least until September 1, 1998, within the Southern District of California and elsewhere, defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA, SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND, JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS, RICHARD YORK, and the persons listed as "charged elsewhere" in paragraph 3 of the Introductory Allegations, knowingly combined, conspired and agreed with each other and with others known and unknown to the grand jury:

18

      a.  to commit certain offenses against the United States, to wit:

        (1)  wire fraud, in violation of Title 18, United States Code, Section 1343, which offense was committed in connection with the conduct of telemarketing, as set forth in Title 18, United States Code, Section 2325;

        (2)  mail fraud, in violation of Title 18, United States Code, Section 1341, which offense was committed in connection with the conduct of telemarketing, as set forth in Title 18, United States Code, Section 2325;

        (3)  securities fraud, in violation of Title 15, United States Code, Section 78j(b) and 17 Code of Federal Regulations Section 240.10b-5;

      b.  to defraud by deceitful and dishonest means by impeding, impairing, obstructing, and defeating the lawful government functions of the:

        (1)  Securities and Exchange Commission in the enforcement of the federal securities laws, including the levying and seizure of ill-gotten gains ordered by the Courts to be disgorged;

        (2)  Federal Trade Commission in the enforcement of the federal consumer protection laws, including the levying and seizure of ill-gotten gains ordered by the Courts to be disgorged; and

        (3)  Department of the Treasury in the tracking and reporting of the specific monies received and concealed by the defendants.

    3.  It was part of the conspiracy that defendants and other coconspirators having devised and intending to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises and by means of intentional concealment and omissions of material facts induced sales of goods and services, as described in paragraphs 5 and 6 below, and to effect and execute the aforesaid scheme and artifice to defraud, defendants and other conspirators knowingly made interstate telephone calls, in violation of Title 18, United States Code, Section 1343, and used or caused to be used the U.S. Mails or private, commercial interstate carriers, in violation of Title 18, United States Code, Section 1341.

    4.  It was further part of the conspiracy that defendants and other coconspirators, by use of means and instrumentalities of interstate commerce and the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 20 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 20 of 70

Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 21 of 91

1  sale of securities, and employed and attempted to employ the aforesaid device, scheme and artifice to

2  defraud, made untrue statements of material facts and omitted to state material facts necessary in order

3  to make the statements made, in light of the circumstance under which they were made, not

4  misleading, and engaged in acts, practices and a course of business which operated as a fraud and

5  deceit upon victims, in violation of Title 15, United States Code, Section 78j(b).

6  The Scheme and Artifice to Defraud and<br>The Manner and Means Used to Execute It

7  

8     5.  It was part of the scheme and artifice to defraud and among the manner and means used to

9  execute it that:

10     a.  Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

11  and Green as promoters, aided by defendant LEONARD and others, made all decisions concerning

12  the Enterprise's operation, including but not limited to the design and development of the 12

13  investment offerings (Touch Tone I, Touch Tone II, Link 900, Bureau Net, Teleserve, Future Net,

14  Plaza Partners, Home Net, I-Net Providers, Enternet, ConnectKom and Intellicom) and related

15  promotional and marketing materials, recruiting and hiring of boiler rooms/ISOs, recruiting and hiring

16  of administrative personnel and other persons to serve as presidents of Initial Managing Partner

17  companies, development of pitch sheets, rebuttals and other sales presentations and related materials,

18  purchase of sales leads, recruiting and hiring of vendors and other consultants, customer relations, and

19  all other matters requiring management decision-making.

20     b.  Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

21  and Green, controlled, supervised and motivated boiler room/ISO owners in a manner which produced

22  the highest degree of sales proficiency and maximized sales.

23     c.  Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

24  and Green as promoters, aided by defendant LEONARD and others, created glossy brochures, legal

25  memoranda, pitch sheets/sales scripts, brochure inserts, newsletters, and other materials which falsely

26  described investment opportunities in purported general partnerships and directed and knowingly

27  allowed defendants SHIELDS, HART, McCLAFFERTY, EVANGELIST, BOLLENBACH,

28  MORRIS, GRAYSON, MARFOGLIA, METOYER, SHEHYN, DIAMAND, RISSMILLER,

Case 3:08-cr-07016-BTM     Document 1-2     Filed 03/21/2008     Page 21 of 70
Case 1:07-cr-00598-PCF     Document 1-2     Filed 11/26/2007     Page 21 of 70
Case 3:01-cr-01415-BTM     Document 1     Filed 04/27/2001     Page 22 of 91

1  CASTRIOTTA, JACONSKI, ROBINSON, SANDERS, YORK, T. Grayson, Engelhardt, Widmer and

2  Goddard as boiler room/ISO operators, managers and salespersons, to use these false and fraudulent

3  materials in selling the units of the general partnerships.

4       d.  Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

5  and Green as promoters, aided by defendant LEONARD and others, changed the name, address and

6  phone number of the corporation selling a partnership investment each time a new partnership was

7  offered to avoid regulatory authorities and investor contact.

8       e.  Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

9  and Green as promoters, engaged the legal services of defendant LEONARD and Wellman, each of

10 whom were California attorneys, to aid them in:

11        (1)  preparing various legal documents required for the development and marketing of

12 the fraudulent investment offerings generally, and in particular, as general partnerships;

13        (2)  creating separate corporations (the Initial Managing Partners) to act as the "front"

14 for each investment offering;

15        (3)  preparing deceptive agreements which disguised their control of the design,

16 development and marketing of the investment offerings and made them appear to be only

17 "consultants" to the boiler rooms/ISOs;

18        (4)  changing regularly the locations and corporate names of the Enterprise's corporate

19 headquarters, boiler rooms/ISOs and administrative offices, described above, to prevent investors and

20 government regulators from identifying the members of the Enterprise;

21        (5)  responding to complaints from investors and complaints and adverse regulatory

22 action by governmental authorities.

23      f.  Defendant LEVINE and Itskowitz, Rearick, Lopuszynski, Courtney and Green as

24 promoters, recruited and hired defendants SHOUCAIR and McCLAFFERTY and Traub, Engelhardt,

25 Coffey, Widmer, Slaton, Coyne, Nachamkin, Perelman and Ericson to be presidents of the Initial

26 Managing Partner companies for the investment offerings, as set forth below:

27 //

28 //

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 22 of 70

Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 22 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 23 of 91

|  | I.M.P. Company | President | Investment Offering |
|---|---|---|---|
| (1) | Granada | SHOUCAIR | Touch Tone II |
| (2) | Merging Capital | Traub | Link 900 |
| (3) | Telelink | Engelhardt | Bureau Net |
| (4) | Protek Holdings | Coffey | Teleserve |
| (5) | Future Tech | Widmer | Future Net |
| (6) | Net One | McCLAFFERTY | Plaza Partners |
| (7) | World Net Development | Slaton | Home Net |
| (8) | I-Net Holdings | Coyne | I-Net Providers |
| (9) | Enternet 2000 | Nachamkin | Enternet |
| (10) | ConnectKom Services | Perelman | ConnectKom |
| (11) | Intellicom Services | Ericson | Intellicom |

g.    Defendant LEVINE and Itskowitz, Rearick, Lopuszynski, Courtney and Green as promoters, directed the Initial Managing Partners, defendants SHOUCAIR and McCLAFFERTY and Traub, Engelhardt, Coffey, Widmer, Slaton, Coyne, Nachamkin, Perelman and Ericson, to perform the following acts, among others, during the period their respective offerings were marketed:

(1)  opening bank accounts in the names of the Initial Managing Partner companies;

(2)  allowing rubber stamps or facsimiles to be made of their signatures;

(3)  opening one or more accounts at commercial mail receiving services ("mail drops"), telephone answering services and "rent-a-suites" the addresses of which were falsely described by Enterprise salespersons to investors as the addresses of offices of the corporation selling the investment offering.

(4)  preparing personal biographies which contained false or misleading information about their qualifications and experience in operating "high-tech" businesses and relating to the technology involved in the investment offerings being marketed;

(5)  visiting the boiler rooms/ISOs to discuss the investment offerings and approaches to selling interests in them to prospective investors; and

//

22

Case 3:08-cr-07016-BTM     Document 1-2     Filed 03/21/2008     Page 23 of 70
Case 1:07-cr-00598-RCE     Document 1-2     Filed 11/26/2007     Page 23 of 70
Case 3:07-cr-01415-BTM     Document 1-2     Filed 04/27/2001     Page 24 of 91

1         (6)  speaking with prospective investors who were unwilling to invest unless they were

2    able to speak personally with the president of the Initial Managing Partner company.

3         h.  Defendants SHIELDS, HART, McCLAFFERTY, EVANGELIST, BOLLENBACH,

4    MORRIS, GRAYSON, MARFOGLIA, METOYER, SHEHYN, DIAMAND, RISSMILLER,

5    CASTRIOTTA, JACONSKI, ROBINSON, SANDERS, YORK, Lopuszynski, Courtney, T. Grayson,

6    Engelhardt, Widmer and Goddard as boiler room/ISO owners, managers and salespersons;

7         (1)  obtained from their coconspirators "leads" containing the names, addresses and

8    telephone numbers of persons across the United States, who were often elderly, and who had

9    previously invested in "high-tech," telecommunications-related investment offerings;

10        (2)  contacted such persons by means of intrastate and interstate telephone calls and told

11    them that the defendants were selling various "high-tech," telecommunications-related investment

12    offerings; and

13        (3)  used false and misleading statements and promises to induce and attempt to induce

14    victims over the telephone to send money to the defendants by overnight delivery by the U.S. Mails

15    or by private, commercial interstate carriers.

16        i.  Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

17    and Green as promoters, aided by defendant LEONARD and others, and defendants SHIELDS,

18    HART, McCLAFFERTY, EVANGELIST, BOLLENBACH, MORRIS, GRAYSON, MARFOGLIA,

19    METOYER, SHEHYN, DIAMAND, RISSMILLER, CASTRIOTTA, JACONSKI, ROBINSON,

20    SANDERS and YORK, Lopuszynski, Courtney, T. Grayson, Engelhardt, Widmer and Goddard and

21    others as boiler room/ISO owners, managers and salespersons, knowingly and intentionally:

22        (1)  offered and sold unregistered securities in the form of general partnership units to

23    victims who invested in the range of between $5,000 to in excess of $200,000.

24        (2)  offered and sold securities without being licensed as broker-dealers under the federal

25    securities laws.

26        (3)  disseminated false and fraudulent information to investors.

27    //

28    //

1        (4)  provided to investors a glossy brochure and other promotional information which

2    contained false and misleading information about the location, address and telephone number of the

3    headquarters and offices of the corporation selling the investment offering.

4        (5)  provided to investors a legal memorandum/partnership agreement for each

5    partnership offering which:

6        (a)  falsely represented that investor funds would be controlled by the Initial

7    Managing Partner whose company headquarters was located where business would be conducted.

8        (b)  failed to disclose that the defendants and others controlled the investor funds

9    and diverted those investor funds for the personal enrichment of the defendants and their agents.

10        (c)  failed to disclose that approximately eighty-five percent (85%) of investor funds

11    would be used primarily for consulting, management and sales fees and not for development of a

12    viable business.

13        (d)  failed to disclose that the persons who had designed and developed the offering

14    had been subject to adverse federal and state regulatory action for the sale of unregistered securities

15    and fraud.

16      j.   Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

17    and Green as promoters, aided by defendant LEONARD and others, and defendants SHIELDS,

18    HART, McCLAFFERTY, EVANGELIST, BOLLENBACH, MORRIS, GRAYSON, MARFOGLIA,

19    METOYER, SHEHYN, DIAMAND, RISSMILLER, CASTRIOTTA, JACONSKI, ROBINSON,

20    SANDERS and YORK, Lopuszynski, Courtney, T. Grayson, Engelhardt, Widmer and Goddard and

21    others as boiler room/ISO owners, managers and salespersons, used the United States Mails, private,

22    commercial interstate carriers, and direct telephonic sales presentations to knowingly and intentionally

23    make the following material misrepresentations, among others, to investors:

24        (1)  <u>Each Offering Was a "Turn-key" Business</u>.  Each of the ventures was falsely

25    represented to be a viable business substantially ready for profitable operations that would be turned

26    over to investors at the first partnership meeting by the Initial Managing Partner, who was developing

27    it for their benefit.

28    //

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 25 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 25 of 70

Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 26 of 91

1         (2) <u>Each Offering Was Likely to Generate Substantial Profits</u>.  Investors were falsely

2 told they were "getting in on the ground floor" of a venture guaranteed to reap immediate (within 30-

3 60 days after the offering was funded and the first partnership meeting was held) and substantial (up

4 to a 300 percent return) profits.  During the latter six offerings, investors were falsely told that they

5 would also receive a huge bonus from stock sales when their company became publicly traded.

6         (3) <u>Each Offering Was a Low Risk and Conservative Investment</u>.  Investors were falsely

7 told that each of the offerings was a low risk, conservative investment, and older consumers were even

8 encouraged to invest their retirement savings.

9         (4) <u>Previous Ventures Had Yielded Positive Returns to Investors</u>.    Enterprise

10 telemarketers falsely touted the success of previous offerings despite knowing that none of the

11 offerings had ever produced any assets, income, profit, return of capital or otherwise viable business

12 to investors.

13     k.    Defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski, Courtney

14 and Green as promoters, and defendants SHIELDS, HART, McCLAFFERTY, EVANGELIST,

15 BOLLENBACH, MORRIS, GRAYSON, MARFOGLIA, METOYER, SHEHYN, DIAMAND,

16 RISSMILLER, CASTRIOTTA, JACONSKI, ROBINSON, SANDERS and YORK, Lopuszynski,

17 Courtney, T. Grayson, Engelhardt, Widmer and Goddard and others as boiler room/ISO owners,

18 managers and salespersons:

19         (1)   diverted investor funds placed with them to purchase units in the partnerships into

20 bank accounts which defendants and others converted to their uses, which included a commission

21 override on all partnership units sold by the Enterprise, and to other uses concealed from and not

22 disclosed to investors.

23         (2)   conducted their activities in a manner calculated to conceal and cover up the

24 fraudulent nature of the investments and to otherwise mislead and deceive investors into placing funds

25 with defendants.

26         (3)   required victims to send their money to the defendants by overnight delivery through

27 private, commercial interstate carriers or through the U.S. Mails.

28         (4)   failed to file a "Telephonic Seller's Registration" in California.

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 26 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 26 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 27 of 91

6. It was further part of the scheme and artifice to defraud and among the manner and means used to execute it that each of the fraudulent investment offerings were sold in connection with the conduct of telemarketing, as defined by Title 18, United States Code, Section 2325, and through the execution of the scheme and artifice to defraud, 10 or more persons over the age of 55 were victimized.

7. Between on or about July 1, 1994 and on or about June 26, 1997, approximately 3011 victims nationwide invested approximately $49,050,378 in the 12 fraudulent offerings telemarketed by the Enterprise, as set forth below:

| Investment Offering | Offering Period | Total Invested | No. of Victims |
|---|---|---|---|
| Touch Tone I | 07/94-01/95 | $ 3,906,640 | 287 |
| Touch Tone II | 01/95-06/95 | $ 5,010,000 | 384 |
| Link 900 | 06/95-10/95 | $ 4,903,087 | 360 |
| Bureau Net | 06/95-10/95 | $ 4,980,000 | 331 |
| Teleserve | 10/95-12/95 | $ 2,563,734 | 171 |
| Future Net | 10/95-01/96 | $ 4,988,873 | 360 |
| Plaza Partners | 01/96-06/96 | $ 6,411,894 | 230 |
| Home Net | 01/06-08/96 | $ 4,485,000 | 307 |
| I-Net Providers | 06/96-10/96 | $ 4,321,575 | 172 |
| Enternet | 08/96-03/97 | $ 4,974,575 | 253 |
| ConnectKom | 03/97-05/97 | $ 1,500,000 | 86 |
| Intellicom | 05/97-06/97 | $ 1,005,000 | 70 |
| Total | | $49,050,378 | 3011 |

### The Conspiracy to Defraud Agencies of the United States and The Manner and Means Used to Execute It

8. Defendants LEVINE, SHOUCAIR, LEONARD, SHIELDS, HART, McCLAFFERTY, EVANGELIST, BOLLENBACH, MORRIS, GRAYSON, MARFOGLIA, METOYER, SHEHYN, DIAMAND, RISSMILLER, CASTRIOTTA, JACONSKI, ROBINSON, SANDERS and YORK and others, engaged in various activities designed to prevent the DOC, the FTC and the SEC from identifying them and the roles in the design, development and marketing of the offerings, including

26

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 27 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 27 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 28 of 91

1   the use of nominee entities in which to receive funds for their benefit.  Among the various nominee

2   entities used by Enterprise members were:

3        a.     Defendant LEVINE and Itskowitz and Rearick opened financial accounts in the name

4   of Frontline Consulting and World Net Consulting.  During the Enternet offering, commissions

5   received by defendant LEVINE and Itskowitz were paid directly from the partnership account to the

6   client trust account of defendant LEONARD, which LEONARD would further disburse as requested

7   by LEVINE and Itskowitz.

8        b.     Defendants LEVINE and SHOUCAIR and Itskowitz used foreign nominee entities in

9   the Turks and Caicos Islands, including entities known as "SkyTel," and "Stingray," and later

10  "Raheem."

11       c.     Defendant SHOUCAIR used domestic and foreign nominee entities named Arctype

12  Limited (hereinafter "Arctype"), Leads R Us and Viotech.  He also used another nominee account

13  named the Miller and Simon Client Trust in the Turks and Caicos Islands.

14       d.     Lopuszynski and Courtney used a nominee entity in the name of Ultravision.  Courtney

15  used nominee entities in the names of Telemax Consulting, Inc. (hereinafter Telemax") and Frontier

16  Marketing, Inc. (hereinafter "Frontier").

17       e.     Defendants SHIELDS and HART used a nominee entity named Capco Unlimited.

18       f.     Defendant EVANGELIST used nominee entities named Cable Financial Services, Inc.

19  (hereinafter "CFS"), and Microshop, Inc. (hereinafter "Microshop").

20       g.     Defendant MORRIS used a foreign nominee entity in Hong Kong known as Top

21  Communications (hereinafter "Top Comm.").

22       h.     Defendant METOYER used nominee entities named Dealmakers (hereinafter

23  "Dealmakers"), FMG and M-III Associates.

24       i.     T. Grayson used a nominee entity named the King Family Trust.

25       j.     Defendant SHEHYN used a nominee entity named Meridian International, Ltd.

26  (hereinafter "Meridian").

27  //

28  //

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 28 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 28 of 70

Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 29 of 91

1      k.   Defendant DIAMAND used nominee entities in the names of Diamand Interactive

2 Services, Inc., (hereinafter "Diamand Interactive"), Velocity Pacific, Inc., (hereinafter "Velocity

3 Pacific") and Foundation Resources Corp. (hereinafter "Foundation").

4      l.   Defendant RISSMILLER used a nominee entity in the name of Ticket Stubs.

5      m.   Defendant JACONSKI used a nominee entity in the name of Carpe Diem.

6      n.   Defendant CASTRIOTTA used a nominee entity named Big Shot Productions, Inc.

7 (hereinafter "Big Shot").

8      o.   Defendant SANDERS used a nominee entity named Spartan Realty and Spartan

9 International.

10      p.   Defendant YORK used a nominee entity named Azimut.

11     9. Defendants LEVINE, SHOUCAIR and LEONARD, and Itskowitz, Rearick, Lopuszynski,

12 Courtney, Reisner and Wellman and others, converted funds to currency in amounts of less than

13 $10,000 in order to avoid Currency Transaction Reports from being completed by financial

14 institutions.

15     10. Defendants LEVINE and SHOUCAIR and Itskowitz, Reisner and others, destroyed the books

16 and records of the above-described scheme and artifice to defraud to keep the SEC and the FTC from

17 determining the specific monies each defendant received from the above-described scheme and artifice

18 to defraud.

19     11. It was further part of the conspiracy to defraud and among the manner and means used to

20 execute it that defendants LEVINE, SHOUCAIR, LEONARD, SHIELDS and HART and Itskowitz,

21 Rearick, Lopuszynski, Courtney and others, used Initial Managing Partners and others, including

22 Traub, Engelhardt, Coffey, Widmer, defendant McCLAFFERTY, Slaton, Coyne, Nachamkin aka

23 "Mark Nash," Perelman and Ericson as "front men" for the Link 900, Bureau Net, Teleserve, Future

24 Net, Plaza Partners, Home Net, I-Net Providers, Enternet, ConnectKom and Intellicom offerings and

25 boiler rooms/ISOs of the above-described scheme and artifice to defraud, by placing the respective

26 Initial Managing Partner's name on bank accounts and incorporation documents to keep the SEC and

27 the FTC from determining the true promoters of the offerings and the owners of the boiler rooms/ISOs

28 //

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 29 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 29 of 70

Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 30 of 91

1  in order to conceal specific monies each defendant received from the above-described scheme and

2  artifice to defraud.

3      12. Defendants LEVINE, SHOUCAIR, LEONARD, SHIELDS, HART, EVANGELIST,

4  BOLLENBACH, MORRIS, GRAYSON, MARFOGLIA, and METOYER and Itskowitz, Rearick,

5  Lopuszynski, Courtney, and T. Grayson and others, changed the names of the boiler rooms/ISOs of

6  the above-described scheme and artifice to defraud, after the receipt of cease and desist orders from

7  various state regulatory agencies, the DOC searches and desist and refrain orders, the SEC

8  investigation in Los Angeles, and the temporary restraining order and asset freeze issued in Florida

9  to prevent the SEC and the FTC from determining the true promoters of the offerings and the owners

10  of the boiler rooms/ISOs in order to conceal specific monies each defendant received from the above-

11  described scheme and artifice to defraud.

12      13.  Defendants LEVINE, SHOUCAIR, SHIELDS, HART, EVANGELIST, BOLLENBACH and

13  MORRIS and Itskowitz, Rearick, Lopuszynski, Courtney, and T. Grayson and others, encouraged

14  salespersons at the boiler rooms/ISOs, including defendants DIAMAND, RISSMILLER,

15  CASTRIOTTA, JACONSKI, ROBINSON, SANDERS and YORK, to use nominee names (including

16  corporate and "dba" nominees), to maintain minimal bank account balances, to negotiate commission

17  checks for currency, and to accept commission payments in the form of currency to keep the SEC, the

18  FTC and the Department of the Treasury from determining the specific monies each salesperson

19  received from the above-described scheme and artifice to defraud.

20                               **Overt Acts**

21      In furtherance of said conspiracy and to effect the objects thereof, in or about the months and on

22  or about the dates listed below, the following overt acts, among others, were committed within the

23  Southern District of California and elsewhere:

24      1. Between on or about 09/27/94 and in or about 06/96, as set forth in the table below, defendants

25          LEVINE and SHOUCAIR and others caused consulting agreements to be executed between

26          the following entities concerning the following offerings:

27  //

28  //

29

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 30 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 30 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 31 of 91

| OA# | Date | Entity | Entity | Offering |
|-----|------|--------|--------|----------|
| 1.1 | 09/27/94 | I on The Marc | BMC Enterprises | Touch Tone I |
| 1.2 | 10/01/94 | Frontline Consulting | BMC Enterprises | Touch Tone I |
| 1.3 | 01/03/95 | Frontline Consulting | Granada | Touch Tone II |
| 1.4 | 05/95 | Frontline Consulting | Telelink | Bureau Net |
| 1.5 | 05/23/95 | Frontline Consulting | Merging Capital | Link 900 |
| 1.6 | 09/95 | Frontline Consulting | Protek Holdings | Teleserve |
| 1.7 | 09/20/95 | Frontline Consulting | Future Tech | Future Net |
| 1.8 | 12/95 | Frontline Consulting | World Net Dev. | Home Net |
| 1.9 | 01/95 | World Net Consulting | Net One | Plaza Partners |
| 1.10 | 01/16/96 | World Net Consulting | World Net Dev. | Home Net |
| 1.11 | 06/96 | World Net Consulting | I-Net Holdings | I-Net Providers |

2. Between on or about 05/25/95 and in or about 07/01/96, as set forth in the table below, defendants LEVINE, SHOUCAIR, SHIELDS and HART and others caused Independent Sales Representative Agreements to be executed between the following entities concerning the following offerings:

| OA# | Date | Entity | Entity | Offering |
|-----|------|--------|--------|----------|
| 2.1 | 05/25/95 | Capital Link | Merging Capital | Link 900 |
| 2.2 | 07/01/96 | VOH | I-Net Holdings | I-Net Providers |

3. Between in or about 10/94 and in or about 03/97, as set forth in the table below, the following defendant(s) and others began designing and developing the following offerings:

| OA# | Date | Defendant(s) | Offering |
|-----|------|--------------|----------|
| 3.1 | 10/94 | LEVINE | Touch Tone II |
| 3.2 | 05/95 | LEVINE, SHOUCAIR | Link 900 |
| 3.3 | 05/95 | LEVINE, SHOUCAIR | Bureau Net |
| 3.4 | 08/95 | LEVINE, SHOUCAIR | Future Net |
| 3.5 | 09/95 | LEVINE, SHOUCAIR | Teleserve |
| 3.6 | 11/95 | LEVINE, SHOUCAIR | Home Net |

30

Case 3:08-cr-07016-BTM     Document 1-2     Filed 03/21/2008     Page 31 of 70
Case 1:07-cr-00598-PCE     Document 1-2     Filed 11/26/2007     Page 31 of 70

Case 3:01-cr-01415-BTM     Document 1     Filed 04/27/2001     Page 32 of 91

| OA# | Date | Defendant(s) | Offering |
|---|---|---|---|
| 3.7 | 11/95 | LEVINE, SHOUCAIR, McCLAFFERTY | Plaza Partners |
| 3.8 | 06/96 | LEVINE, SHOUCAIR | I-Net Providers |
| 3.9 | 07/96 | LEVINE, SHOUCAIR | Enternet |
| 3.10 | 01/97 | LEVINE, SHOUCAIR | ConnectKom |
| 3.11 | 03/97 | LEVINE, SHOUCAIR | Intellicom |

4. Between on or about 01/12/95 and on or about 03/13/97, as set forth in the table below, the following defendant(s) and others caused the following entities to be incorporated in the following states:

| OA# | Date | Defendant(s) | Corporation | State |
|---|---|---|---|---|
| 4.1 | 01/12/95 | LEVINE, SHOUCAIR | Granada | CA |
| 4.2 | 05/95 | LEVINE, SHOUCAIR | Telelink | CA |
| 4.3 | 05/95 | LEVINE, SHOUCAIR | Merging Capital | CA |
| 4.4 | 06/28/95 | SHOUCAIR | Tower | CA |
| 4.5 | 07/18/95 | HART | Apex Marketing | FL |
| 4.6 | 08/10/95 | LEVINE, SHOUCAIR | Future Tech | CA |
| 4.7 | 08/14/95 | LEVINE | World Net Consulting | NV |
| 4.8 | 10/15/95 | LEVINE, SHOUCAIR | World Net Dev. | CA |
| 4.9 | 10/23/95 | DIAMAND | Foundation | NV |
| 4.10 | 10/25/95 | SHIELDS, HART | Capco Unlimited | FL |
| 4.11 | 11/28/95 | SHIELDS, HART, SHEHYN | TWCCI | NV |
| 4.12 | 12/06/95 | EVANGELIST | Microshop | NV |
| 4.13 | 01/09/96 | LEVINE, SHOUCAIR | Prostaff | CA |
| 4.14 | 01/29/96 | LEVINE, SHOUCAIR | Enternet 2000 | NV |
| 4.15 | 01/25/96 | MORRIS | Networld | CA |
| 4.16 | 01/30/96 | MORRIS | Selective | CA |
| 4.17 | 02/01/96 | SHIELDS, HART, SHEHYN | TWCI | NV |
| 4.18 | 02/14/96 | SHIELDS, HART | Select Services, MCG | FL |
| 4.19 | 02/16/96 | Other - Courtney | Frontier | NV |

31

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 32 of 70
Case 1:07-cr-00598-PCE -    Document 1    Filed 11/26/2007    Page 32 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 33 of 91

| OA# | Date | Defendant(s) | Corporation | State |
|-----|------|--------------|-------------|-------|
| 4.20 | 02/20/96 | LEVINE, SHOUCAIR | Support Staff | CA |
| 4.21 | 05/31/96 | SHIELDS, HART, SHEHYN | VOH | DE |
| 4.22 | 07/96 | GRAYSON | Money Makers | NV |
| 4.23 | 08/21/96 | MORRIS | Perspective | CA |
| 4.24 | 09/19/96 | GRAYSON, MARFOGLIA | New Age | NV |
| 4.25 | 11/07/97 | LEVINE, SHOUCAIR | AAS | CA |
| 4.26 | 11/07/96 | EVANGELIST, BOLLENBACH | ALD | NV |
| 4.27 | 12/19/96 | DIAMAND | Velocity Pacific | NV |
| 4.28 | 03/13/97 | LEVINE, SHOUCAIR, LEONARD | ConnectKom Services | CA |

5. Between on or about 01/10/95 and on or about 05/01/97, as set forth in the table below, the following defendant(s) and others caused Wellman to create a Private Offering Memorandum and General Partnership Agreement for the following offerings:

| OA# | Date | Defendant(s) | Offering |
|-----|------|--------------|----------|
| 5.1 | 01/10/95 | LEVINE | Touch Tone II |
| 5.2 | 06/01/95 | LEVINE, SHOUCAIR | Link 900 |
| 5.3 | 06/15/95 | LEVINE, SHOUCAIR | Bureau Net |
| 5.4 | 09/15/95 | LEVINE, SHOUCAIR | Future Net |
| 5.6 | 10/01/95 | LEVINE, SHOUCAIR | Teleserve |
| 5.7 | 01/01/96 | LEVINE, SHOUCAIR | Home Net |
| 5.8 | 01/15/96 | LEVINE, SHOUCAIR, McCLAFFERTY | Plaza Partners |
| 5.9 | 06/25/96 | LEVINE, SHOUCAIR | I-Net Providers |
| 5.10 | 08/01/96 | LEVINE, SHOUCAIR | Enternet |
| 5.11 | 02/01/97 | LEVINE, SHOUCAIR | ConnectKom |
| 5.12 | 05/01/97 | LEVINE, SHOUCAIR | Intellicom |

6. Between on or about 03/13/95 and on or about 04/29/96, as set forth in the table below, the following defendant(s) and others caused a general partnership meeting to be held in the Los Angeles, California area relating to the following offerings:

32

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 33 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 33 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 34 of 91

| OA# | Date | Defendant(s) | Offering |
|-----|------|--------------|----------|
| 6.1 | 03/13/95 | LEVINE, LEONARD | Touch Tone I |
| 6.2 | 10/16/95 | LEVINE, SHOUCAIR, LEONARD | Touch Tone II |
| 6.3 | 02/19/96 | LEVINE, SHOUCAIR, LEONARD | Link 900 |
| 6.4 | 12/11/95 | LEVINE, SHOUCAIR, LEONARD | Bureau Net |
| 6.5 | 01/22/96 | LEVINE, SHOUCAIR, LEONARD | Future Net |
| 6.6 | 02/19/96 | LEVINE, SHOUCAIR, LEONARD | Link 900 |
| 6.7 | 04/29/96 | LEVINE, SHOUCAIR, LEONARD | Teleserve |

7. Between on or about 12/20/95 and on or about 04/08/97, as set forth in the table below, defendants LEVINE and SHOUCAIR and others caused to be opened the following private mail boxes at commercial mail receiving agencies at the following addresses for mail to be received under the following names:

| OA# | Date | Box | Address | Recipient |
|-----|------|-----|---------|-----------|
| 7.1 | 12/20/95 | #294 | 19528 Ventura Blvd., Tarzana, CA 91356 | Prostaff |
| 7.2 | 01/19/96 | #537 | 20929-47 Ventura Blvd., Woodland Hills, CA 91364 | World Net Dev. |
| 7.3 | 01/19/96 | #537 | 20929-47 Ventura Blvd., Woodland Hills, CA 91364 | Home Net |
| 7.4 | 02/01/96 | #212 | 22647 Ventura Blvd., Woodland Hills, CA 91364 | Granite |
| 7.5 | 02/21/96 | #537 | 5859 Kanan Road, Agoura Hills, CA 91301 | World Net Dev. |
| 7.6 | 02/21/96 | #537 | 5859 Kanan Road, Agoura Hills, CA 91301 | Home Net |
| 7.7 | 03/04/96 | #212 | 22647 Ventura Blvd., Woodland Hills, CA 91364 | World Net |
| 7.8 | 08/08/96 | #304 | 18034 Ventura Blvd., Encino, CA 91316 | Enternet 2000 |
| 7.9 | 08/12/96 | #137 | 5737 Kanan Road, Agoura Hills, CA 91301 | Enternet |
| 7.10 | 08/21/96 | #308 | 7910 Ivanhoe Avenue, La Jolla, CA 92037 | ALD |
| 7.11 | 11/18/96 | #332 | 19528 Ventura Blvd., Tarzana, CA 91356 | Enternet 2000 |
| 7.12 | 01/30/97 | #514 | 18375 Ventura Blvd., Tarzana, CA 91356 | ConnectKom |
| 7.13 | 04/08/97 | #154 | 18034 Ventura Blvd., Encino, CA 91316 | Intellicom |

//

8. Between on or about 11/24/95 and on or about 01/21/97, as set forth in the table below, defendant DIAMAND caused to be opened the following private mail boxes at commercial mail receiving agencies at the following addresses for mail to be received under the following names:

| OA# | Date | Box | Address | Recipient |
|-----|------|-----|---------|-----------|
| 8.1 | 11/24/95 | #424 | 22647 Ventura Blvd., Woodland Hills, CA 91364 | Foundation |
| 8.2 | 01/21/97 | #424 | 22647 Ventura Blvd., Woodland Hills, CA 91364 | Velocity Pacific |

9. Between on or about 07/24/96 and on or about 04/09/97, as set forth in the table below, defendants LEVINE and SHOUCAIR and others caused to be opened the following executive suites (physical address, telephone answering and mail receipt/forwarding services) at commercial locations at the following addresses for services for the following entities:

| OA# | Date | Address | Receiving Entity |
|-----|------|---------|------------------|
| 9.1 | 07/24/96 | 625 N. Michigan Ave., Suite 600, Chicago, IL 60611 | Enternet 2000 |
| 9.2 | 02/03/97 | 901 Market Street, Wilmington, DE 19801 | ConnectKom Services |
| 9.3 | 04/09/97 | 42 Read's Way, New Castle, DE 19720 | Intellicom Services |
| 9.4 | 04/09/97 | 100 Park Avenue, 16th Floor, New York, NY 10017 | Intellicom Group |

10. Between on or about 01/10/96 and on or about 02/02/96, as set forth in the table below, defendants LEVINE and SHOUCAIR and others caused the following defendant(s) and others to change the name of the following boiler rooms/ISOs they operated:

| OA# | Date | Defendant(s) | ISO Previous Name | ISO New Name |
|-----|------|--------------|-------------------|--------------|
| 10.1 | 01/10/96 | Engelhardt | Tower | Venture One |
| 10.2 | 01/25/96 | MORRIS | Lion's Share | Networld |
| 10.3 | 01/29/96 | EVANGELIST BOLLENBACH | Livestock | MediaTech |
| 10.4 | 02/02/96 | T. Grayson | Brookside | Granite |

//

34

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 35 of 70
Case 1:07-cr-00598-RCE    Document 1-2    Filed 11/26/2007    Page 35 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001    Page 36 of 91

11. Between on or about 05/95 and on or about 06/96, as set forth in the table below, the following defendant(s) and others participated in meetings, among others, at the following locations:

| OA# | Date | Defendant(s) | Location |
|-----|------|--------------|----------|
| 11.1 | 05/95 | LEVINE, SHOUCAIR, SHIELDS, HART | Woodland Hills, CA |
| 11.2 | 06/95 | LEVINE, SHOUCAIR, SHIELDS, HART | Maitland, FL |
| 11.3 | 01/96 | SHIELDS, HART, McCLAFFERTY | Maitland, FL |
| 11.4 | 02/96 | LEVINE, SHOUCAIR, SHIELDS, HART | Las Vegas, NV |
| 11.5 | 06/96 | LEVINE, SHOUCAIR, SHIELDS, HART | Las Vegas, NV |

12. Between on or about 12/05/94 and on or about 06/24/97, as set forth in the table below, the following defendants and others while employed as a salesperson or operator of the following boiler rooms/ISOs and while under the direction and control of the following persons and others had an interstate or intrastate telephone conversation the following persons residing in the following cities and states, and cooperating witnesses (hereinafter "CW") residing in the Southern District of California (hereinafter "SDCA") or Eastern District of Michigan (hereinafter "EDMI"), about the following offering(s):

//

//

35

| OA# | Date | Defendant-Others | ISO | Direction/Control | Person Called | City/State | Offering |
|-----|------|------------------|-----|-------------------|---------------|------------|----------|
| 12.1 | 12/05/94 | Widmer | Madison | SHOUCAIR | Yolanda Rodriguez | Laverne, CA | Touch Tone I |
| 12.2 | 12/12/94 | DIAMAND | Brookside | Others | Mary Anne Barothy | Indianapolis, IN | Touch Tone I |
| 12.3 | 12/14/94 | Salesperson | Madison | SHOUCAIR | Sylva Warren | San Diego, CA | Touch Tone I |
| 12.4 | 12/28/94 | Salesperson | Brookside | Others | CW-1-KS | SDCA | Touch Tone I |
| 12.5 | 02/01/95 | YORK | Livestock | EVANGELIST BOLLENBACH | CW-1-KS | SDCA | Touch Tone II |
| 12.6 | 02/15/95 | Salesperson | Lion's Share | MORRIS | Betty Hoover | San Diego, CA | Touch Tone II |
| 12.7 | 03/27/95 | IACONSKI | Lion's Share | MORRIS | James Alburger | San Diego, CA | Touch Tone II |
| 12.8 | 04/95 | Salesperson | Madison | SHOUCAIR | Thomas Norton | Newport Beach, CA | Touch Tone II |
| 12.9 | 04/28/95 | Salesperson | Livestock | EVANGELIST BOLLENBACH | Chester Mason | Coronado, CA | Touch Tone II |
| 12.10 | 05/95 | Salesperson | Livestock | EVANGELIST BOLLENBACH | Norbert Hertel | Bermuda Dunes, CA | Touch Tone II |
| 12.11 | 05/01/95 | Salesperson | Madison | SHOUCAIR | Ilse Tesari | Los Angeles, CA | Touch Tone II |
| 12.12 | 05/25/95 | Salesperson | Brookside | Others | CW-5-FW | EDMI | Touch Tone II |
| 12.13 | 05/25/95 | Salesperson | Lion's Share | MORRIS | CW-1-KS | SDCA | Touch Tone II |
| 12.14 | 07/25/95 | Salesperson | Capital Link | SHIELDS, HART | CW-1-KS | SDCA | Link 900 |
| 12.15 | 08/03/95 | Salesperson | Tower | SHOUCAIR | Ilse Tesari | Los Angeles, CA | Bureau Net |
| 12.16 | 08/10/95 | DIAMAND | Brookside | Others | Lloyd Lundstrom | Orinda, CA | Bureau Net |

36

| OA# | Date | Defendant-Others | ISO | Direction/Control | Person Called | City/State | Offering |
|---|---|---|---|---|---|---|---|
| 12.17 | 11/95 | DIAMAND | Brookside | Others | Willy Haselhoef | Dunlap, IL | Future Net |
| 12.18 | 12/04/95 | SANDERS | Livestock | EVANGELIST BOLLENBACH | CW-1-KS | SDCA | Future Net |
| 12.19 | 12/26/95 | Salesperson | Tower | Others | Edward Murphy | Palos Verdes, CA | Future Net |
| 12.20 | 03/20/96 | SHEHYN | VOH | SHIELDS, HART McCLAFFERTY | O.C. Riser, Jr. | Antioch, CA | Plaza Partners |
| 12.21 | 03/29/96 | DIAMAND ROBINSON | Granite | Others | Dennis Rankin | Oxford, NE | Home Net |
| 12.22 | 04/96 | RISSMILLER | Networld | MORRIS | Adelina Garcia | San Bernardino, CA | Home Net |
| 12.23 | 04/04/96 | McCLAFFERTY | | | Anthony DeMarco | Manchester, CT | Plaza Partners |
| 12.24 | 04/19/96 | SHEHYN | VOH | SHIELDS, HART | John Hudiburg | Albequerque, NM | Plaza Partners |
| 12.25 | 04/23/96 | McCLAFFERTY | | | John Hudiburg | Albequerque, NM | Plaza Partners |
| 12.26 | 04/25/96 | ROBINSON | Granite | Others | CW-1-KS | SDCA | Home Net |
| 12.27 | 05/01/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | William Hudson | Santee, CA | Plaza Partners |
| 12.28 | 05/02/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Vince LaForce, Jr. | Randy, VA | Plaza Partners |
| 12.29 | 05/03/96 | YORK | MediaTech | EVANGELIST BOLLENBACH | William Crousore | Walton, IN | Home Net |
| 12.30 | 05/10/96 | DIAMAND | Granite | Others | CW-1-KS | SDCA | Home Net |
| 12.31 | 05/20/96 | McCLAFFERTY | | | James Adam | Medina, OH | Plaza Partners |

37

| OA# | Date | Defendant-Others | ISO | Direction/Control | Person Called | City/State | Offering |
|-----|------|------------------|-----|-------------------|---------------|------------|----------|
| 12.32 | 05/20/96 | McCLAFFERTY | | | Cindy Mussara | Medina, OH | Plaza Partners |
| 12.33 | 05/23/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Patricia Jackson | Oceanside, CA | Plaza Partners |
| 12.34 | 05/23/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Wayne Wells | Yorktown, VA | Plaza Partners |
| 12.35 | 05/29/96 | Salesperson | VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | SDCA | Plaza Partners |
| 12.36 | 05/30/96 | YORK | MediaTech | EVANGELIST BOLLENBACH | Yvonne Planque | Loomis, WA | Home Net |
| 12.37 | 06/96 | RISSMILLER | Networld | MORRIS | June Goehring | Lodi, CA | Home Net |
| 12.38 | 06/02/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Todd Jensen | St. Paul, MN | Plaza Partners |
| 12.39 | 06/04/96 | Salesperson | VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | SDCA | Plaza Partners |
| 12.40 | 06/05/96 | YORK | MediaTech | EVANGELIST BOLLENBACH | Bob Knott | Dallas, TX | Home Net |
| 12.41 | 06/12/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Ming-Ching Shyu | San Diego, CA | Plaza Partners |
| 12.42 | 06/13/96 | GRAYSON | Money Makers | McCLAFFERTY | Joseph Ambrosic | Dayton, OH | Plaza Partners |

| OA# | Date | Defendant-Others | ISO | Direction/Control | Person Called | City/State | Offering |
|-----|------|------------------|-----|-------------------|---------------|------------|----------|
| 12.43 | 06/14/96 | Salesperson | VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | SDCA | Plaza Partners |
| 12.44 | 06/14/96 | SHEHYN | VOH | SHIELDS, HART McCLAFFERTY | CW-1-KS | SDCA | Plaza Partners |
| 12.45 | 06/28/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Ralph Hunt, III | San Diego, CA | Plaza Partners |
| 12.46 | 06/23/96 | SHEHYN | VOH | SHIELDS, HART McCLAFFERTY | Dwight Storey | Fresno, CA | Plaza Partners |
| 12.47 | 06/24/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Greg Herbst | Portland, OR | I-Net Providers |
| 12.48 | 07/96 | Salesperson | TWCCI | SHIELDS, HART McCLAFFERTY | Jef Saltzman | Portland, OR | Plaza Partners |
| 12.49 | 07/96 | Salesperson | TWCCI | SHIELDS, HART | Keith Franz | Highlands Ranch, CO | I-Net Providers |
| 12.50 | 07/03/96 | DIAMAND | Granite | Others | Joseph Mesich | Gallup, NM | Home Net |
| 12.51 | 07/09/96 | Salesperson | Networld | MORRIS | Viola Askew | Bentonville, AR | Home Net |
| 12.52 | 07/09/96 | MARFOGLIA | Money Makers | GRAYSON | Walter Stefanski | Riverside, Il | Home Net |
| 12.53 | 07/22/96 | Salesperson | TWCCI | SHIELDS, HART | Roberto Cueva | La Mesa, CA | I-Net Providers |
| 12.54 | 07/30/96 | SHEHYN | VOH | SHIELDS, HART | Herbert Cholger | Tawas City, MI | I-Net Providers |
| 12.55 | 08/02/96 | SHEHYN | VOH | SHIELDS, HART | CW-1-KS | SDCA | I-Net Providers |
| 12.56 | 08/08/96 | Salesperson | TWCCI | SHIELDS, HART | Harold Beck | Escondido, CA | I-Net Providers |
| 12.57 | 08/20/96 | Salesperson | TWCCI | SHIELDS, HART | Bernard Elbinger | Oceanside, CA | I-Net Providers |

| OA# | Date | Defendant-Others | ISO | Direction/Control | Person Called | City/State | Offering |
|---|---|---|---|---|---|---|---|
| 12.58 | 08/20/96 | SHEHYN | VOH | SHIELDS, HART | CW-1-KS | SDCA | I-Net Providers |
| 12.59 | 09/05/96 | Salesperson | TWCCI | SHIELDS, HART | Donald Mills | Santa Barbara, CA | I-Net Providers |
| 12.60 | 09/17/96 | SANDERS | MediaTech | EVANGELIST BOLLENBACH | Gregory Sablic | Levittown, NY | Entemet |
| 12.61 | 09/17/96 | Salesperson | Networld | MORRIS | G. Michael Egart | Mt. Prospect, IL | Entemet |
| 12.62 | 09/26/96 | Salesperson | TWCCI | SHIELDS, HART | CW-1-KS | SDCA | I-Net Providers |
| 12.63 | 10/10/96 | JACONSKI | Networld | MORRIS | George Parker | Anderson, IN | Entemet |
| 12.64 | 10/14/96 | RISSMILLER | Networld | MORRIS | Louie Csonaki | Vancouver, WA | Entemet |
| 12.65 | 10/17/96 | Salesperson | MediaTech | EVANGELIST BOLLENBACH | Arnold Horton | Moab, UT | Entemet |
| 12.66 | 10/23/96 | MARFOGLIA | Money Makers | GRAYSON | Rose Packer | Jonesville, MI | Entemet |
| 12.67 | 11/04/96 | DIAMAND | Granite | Others | Richard Bower | Williamsport, PA | Entemet |
| 12.68 | 11/14/96 | Salesperson | ALD | EVANGELIST BOLLENBACH | Charles Bermeuter | Jacksonville, FL | Entemet |
| 12.69 | 12/04/96 | RISSMILLER | Networld | MORRIS | Stanley Vale | Morton Grove, IL | Entemet |
| 12.70 | 12/19/96 | Salesperson | New Age | MARFOGLIA | Connie Bell | Pensacola, FL | Entemet |
| 12.71 | 12/22/96 | YORK | ALD | EVANGELIST BOLLENBACH | Doris Soape | Pasadena, TX | Entemet |
| 12.72 | 01/10/97 | Salesperson | ALD | EVANGELIST BOLLENBACH | Kenneth Balbach | Evansville, IN | Entemet |

| OA# | Date | Defendant-Others | ISO | Direction/Control | Person Called | City/State | Offering |
|---|---|---|---|---|---|---|---|
| 12.73 | 01/22/97 | YORK | ALD | EVANGELIST BOLLENBACH | Doralene Niedfelt | Grand Island, NE | Enternet |
| 12.74 | 02/10/97 | YORK | ALD | EVANGELIST BOLLENBACH | Edith Marion | Atlanta, GA | Enternet |
| 12.75 | 02/13/97 | ROBINSON | Granite | Others | Steven Grissom | Guyton, GA | Enternet |
| 12.76 | 02/16/97 | YORK | ALD | EVANGELIST BOLLENBACH | Frank Fila | West Springfield, MA | Enternet |
| 12.77 | 02/21/97 | SANDERS | ALD | EVANGELIST BOLLENBACH | Jamale Walker | Lewisville, ID | Enternet |
| 12.78 | 02/24/97 | METOYER | M-III Associates | Others | CW-4-BE | SDCA | Enternet |
| 12.79 | 03/04/97 | DIAMAND | Granite | Others | CW-3-PC | SDCA | Enternet |
| 12.80 | 03/03/97 | DIAMAND | Granite | Others | Gerald Felker | Lackawanna, NY | Enternet |
| 12.81 | 04/16/97 | Salesperson | New Age | MARFOGLIA | Edna Silveira | San Jose, CA | ConnectKom |
| 12.82 | 05/29/97 | SANDERS | ALD | EVANGELIST BOLLENBACH | CW-2-SF | SDCA | Intellicom |
| 12.83 | 06/97 | MORRIS | Perspective | | G. Michael Egart | Mt. Prospect, IL | Enternet |
| 12.84 | 06/97 | LEONARD | | | G. Michael Egart | Mt. Prospect, IL | Enternet |
| 12.85 | 06/09/97 | DIAMAND | Granite | Others | Wanda Martin | New Lebanon, OH | Intellicom |
| 12.86 | 06/24/97 | ROBINSON | Granite | Others | CW-1-KS | SDCA | Intellicom |

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 42 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 42 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 43 of 91

13. Between on or about 01/10/96 and in or about 12/97, as set forth in the table below, the following defendants committed the following acts:

| OA# | Date | Defendant(s) and Act(s) |
|---|---|---|
| 13.1 | 01/10/96 | Defendant METOYER caused a fictitious business name statement to be filed with the Los Angeles County Recorder's Office to do business as Forest Morgan Green. |
| 13.2 | 01/26/96 | Defendants SHIELDS and HART and Long, as the owners of TWCCI, at the suggestion of defendants LEVINE and SHOUCAIR and Itskowitz, Rearick, Lopuszynski and Courtney, created a separate Reload Department at TWCCI. |
| 13.3 | 01/26/96 | A salesperson at TWCCI, while under the direction and control of defendants SHIELDS and HART and Long, caused Quinn Perez of Salt Lake City, Utah to mail to Protek Holdings a personal check in the amount of $20,000 for the purchase of four units of the Teleserve offering. |
| 13.4 | 03/01/96 | A salesperson at TWCCI, while under the direction and control of defendants SHIELDS and HART and Long, and defendant McCLAFFERTY as president of Net One, caused John E. Michael of Scottsdale, Arizona to mail to Central Plaza two personal checks in the total amount of $100,000 for the purchase of 20 units of the Plaza Partners offering. |
| 13.5 | 10/30/96 | Reisner moved all of the books and records of the Enterprise from the Enterprise headquarters to another location known only to defendants LEVINE and SHOUCAIR and Itskowitz. |
| 13.6 | 12/97 | Defendants LEVINE and SHOUCAIR and Itskowitz and Reisner destroyed most of the books and records of the Enterprise. |

14. Between on or about 01/30/95 and on or about 09/04/98, as set forth in the table below, the following defendants and others committed the following acts in furtherance of the Conspiracy to Defraud Agencies of the United States:

//

//

| OA# | Date | Defendant(s)/Other | Transferring Entity | Receiving Entity Defendant(s)/Other | Instrument Negotiated |
|---|---|---|---|---|---|
| 14.1 | 01/30/95 | LEVINE Itskowitz | Granada CPB Acct #003106845 | Frontline Consulting BOA Acct #1201817688 | $110,000 check |
| 14.2 | 02/17/95 | EVANGELIST BOLLENBACH | Livestock BOA Acct #669907263 | Azimut YORK | $3,344 check #1084 |
| 14.3 | 05/08/95 | Rearick | Frontline Consulting BOA Acct #1201817688 | Wellman Client Trust Acct | $15,025 check #845 |
| 14.4 | 05/12/95 | EVANGELIST BOLLENBACH | Livestock BOA Acct #669907263 | CFS Merrill Lynch Acct #41807D51 | $45,000 wire transfer |
| 14.5 | 08/23/95 | LEVINE Itskowitz | Frontline Consulting BOA Acct #1201817688 | Client Trust Acct #009444076 at CNB - LEONARD | $24,000 check #1000 |
| 14.6 | 08/28/95 | Lopuszynski | Telelink CPB Acct #003107310 | Ultravision | $12,000 check #1109 |
| 14.7 | 09/19/95 | LEVINE | Deposit of Cashier's check #080498 | LEVINE's parents' Acct #2250314 at Interchange Bank | $100,000 |
| 14.8 | 09/25/95 | T. Grayson | Brookside Lockheed FCU #6347591009 | King Family Trust First Rep. Thrift Acct #2200004963 | $75,000 check #409308 |
| 14.9 | 12/07/95 | SHOUCAIR | Future Tech | Arctype BOA Acct #1201618297 | $56,000 deposit |
| 14.10 | 12/08/95 | SHOUCAIR | Arctype BOA Acct #1201618297 | Cash | $9,500 check #2264 |
| 14.11 | 12/09/95 | SHOUCAIR | Arctype BOA Acct #1201618297 | Cash | $9,500 check #2265 |

| OA# | Date | Defendant(s)/Other | Transferring Entity | Receiving Entity Defendant(s)/Other | Instrument Negotiated |
|-----|------|-------------------|---------------------|--------------------------------------|----------------------|
| 14.12 | 12/21/95 | EVANGELIST | CFS Merrill Lynch Acct #41807D51 | Microshop Smith Barney Acct #4821413418. | $93,430 check #348 |
| 14.13 | 01/19/96 | DIAMAND T. Grayson | Brookside Lockheed FCU #6347591009 | Diamand Interactive | $19,000 check #20772 |
| 14.14 | 04/23/96 | LEVINE, SHOUCAIR Itskowitz | World Net Dev. BOA Acct #1290020014 | Client Trust Acct #009444076 at CNB - LEONARD | $100,000 wire transfer |
| 14.15 | 06/18/96 | LEVINE Itskowitz | World Net Consulting BOA Acct #037302288 | Client Trust Acct #009444076 at CNB - LEONARD | $23,231 check #1097 |
| 14.16 | 07/08/96 | LEONARD | Client Trust Acct #009444076 at CNB | Itskowitz | $9,000 check #3139 |
| 14.17 | 07/08/96 | LEONARD | Client Trust Acct #009444076 at CNB | Itskowitz | $9,000 check #3140 |
| 14.18 | 07/25/96 | LEONARD | Client Trust Acct #009444076 at CNB | Relative of Rearick | $50,000 cashiers check #16714717 |
| 14.19 | 09/04/96 | LEVINE Itskowitz | World Net Consulting BOA Acct #037302288 | Client Trust Acct #009444076 at CNB - LEONARD | $17,750 check #1155 |
| 14.20 | 10/09/96 | LEVINE SHOUCAIR | Enternet 2000 Union Bank Acct #1290022580 | Viotech Barclays Bank Acct in Turks & Caicos Islands | $18,000 wire transfer |
| 14.21 | 10/30/96 | LEVINE | World Net Consulting | Mfrs Bank Acct #10400112 $29,600 transaction | $19,700 deposit & $9,900 cash |

| OA# | Date | Defendant(s)/ Other | Transferring Entity | Receiving Entity Defendant(s)/Other | Instrument Negotiated |
|---|---|---|---|---|---|
| 14.22 | 10/31/96 | LEVINE | Mfrs Bank Acct #10400112 | Cash | $9,900 check #636 |
| 14.23 | 11/19/96 | LEVINE SHOUCAIR | Enternet 2000 Union Bank Acct #1290022580 | Courtney - Frontier BOA Acct #430060327 | $30,000 wire transfer |
| 14.24 | 12/13/96 | LEVINE SHOUCAIR | Enternet 2000 Union Bank Acct #1290022580 | M-III Associates METOYER | $11,946 check #1093 |
| 14.25 | 01/22/97 | LEVINE LEONARD | Client Trust Acct #009444076 at CNB | Barclays Bank, Grand Caymans | $50,000 wire transfer |
| 14.26 | 02/07/97 | EVANGELIST BOLLENBACH | ALD Wells Fargo Bank Acct #0849523261 | Big Shot CASTRIOTTA | $7,000 check #290 |
| 14.27 | 02/26/97 | LEVINE SHOUCAIR Itskowitz | Enternet 2000 Union Bank Acct #1290022580 | Client Trust Acct #009444076 at CNB - LEONARD | $49,500 wire transfer |
| 14.28 | 02/27/97 | T. Grayson | Granite BOA Acct #042960656 | Velocity Pacific DIAMAND | $71,000 check #2997 |
| 14.29 | 02/28/97 | LEVINE LEONARD | Client Trust Acct #009444076 at CNB | Barclays Bank, Grand Caymans | $32,548 wire transfer |
| 14.30 | 03/31/97 | LEVINE SHOUCAIR Itskowitz | Enternet 2000 Union Bank Operating Acct #1290022580 | SkyTel Barclays Bank Acct #161247J in Turks & Caicos Islands | $63,999 wire transfer |
| 14.31 | 04/18/97 | EVANGELIST BOLLENBACH | ALD Wells Fargo Bank Acct #0849523261 | Spartan International SANDERS | $4,500 check #470 |

45

| OA# | Date | Defendant(s)/ Other | Transferring Entity | Receiving Entity Defendant(s)/Other | Instrument Negotiated |
|---|---|---|---|---|---|
| 14.32 | 04/23/97 | LEVINE SHOUCAIR Itskowitz | ConnectKom Union Bank Acct #1290035216 | Stingray Barclays Bank Acct in Turks & Caicos Islands | $24,000 wire transfer |
| 14.33 | 04/28/97 | MORRIS | Networld BOA Acct #0057508189 | Top Comm. Hong Kong Standard Charter Bank Acct | $40,000 wire transfer |
| 14.34 | 05/12/97 | LEVINE SHOUCAIR | ConnectKom Services | Cash | $4,000 check #1025 |
| 14.35 | 05/13/97 | LEVINE SHOUCAIR | ConnectKom Services | Cash | $9,800 check #1026 |
| 14.36 | 05/13/97 | MORRIS | Perspective BOA Acct #0057202896 | Ticket Stubs RISSMILLER | $1,900 check #4007 |
| 14.37 | 06/06/97 | MORRIS | Perspective BOA Acct #0057202896 | Carpe Diem International, Inc. IACONSKI | $3,612 check #3043 |
| 14.38 | 06/13/97 | DIAMAND | Velocity Pacific | Foundation Resources | $20,000 check #1134 |
| 14.39 | 12/08/97 | LEVINE | Chase Manhattan Bank Acct #121000021 | Royal Bank of Canada Dominion Securities Limited in Turks and Caicos Islands | $496,116.28 wire transfer |
| 14.40 | 09/01/98 | LEVINE | RBC Dominion Securities Ltd., Turks & Caicos Islands | Washington Mutual Bank Acct #8720605415 | $32,000 wire transfer |
| 14.41 | 09/04/98 | LEVINE | McCollum & Newlands, Barclays Bank, Turks & Caicos Islands | Washington Mutual Bank Acct #8720605415 | $35,982 wire transfer |

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 47 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 47 of 70

Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 48 of 91

1  All in violation of Title 18, United States Code, Section 371.

2  <u>**Counts 2 through 37**</u>

3  [Title 18, U.S.C., Sec. 1343 - Wire Fraud]
   [Title 18, U.S.C., Sec. 2 - Aiding and Abetting]
4  [All Defendants]

5      1. On or about the dates set forth below, within the Southern District of California and elsewhere,

6  defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL

7  LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN

8  McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT

9  DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA,

10  SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND,

11  JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN

12  JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS, RICHARD YORK, the persons

13  listed as "charged elsewhere" in paragraph 3 of the Introductory Allegations, and others known and

14  unknown to the grand jury knowingly and willfully devised and intended to devise a scheme and

15  artifice to defraud investors, as identified below, and to obtain money from said victims by means of

16  materially false and fraudulent pretenses, representations, and promises and by intentional concealment

17  and omission of material facts.

18      <u>**The Scheme and Artifice to Defraud**</u>

19      2. The Introductory Allegations and Paragraphs 5 through 7 of Count 1 are realleged and

20  reasserted as if set forth in full herein.

21      <u>**Execution of the Scheme by Wire Communications**</u>

22      3. On or about the dates alleged below, within the Southern District of California, and elsewhere,

23  defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL

24  LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN

25  McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT

26  DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA,

27  SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND,

28  JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 48 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 48 of 70

Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 49 of 91

1   JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS, RICHARD YORK, and the

2   persons listed as "charged elsewhere" in paragraph 3 of the Introductory Allegations, for the purpose

3   of executing the aforesaid scheme and artifice to defraud, and attempting to do so, knowingly

4   transmitted and caused to be transmitted by means of wire communication in interstate commerce

5   signals and sounds, that is, telephone calls, from various Enterprise sales offices in the Southern

6   District of California and elsewhere to, as set forth below, to (a) victims and (b) cooperating witnesses

7   who were posing as victims and who reside in the Southern District of California, as identified in

8   Counts 2 through 37 below:

9        a.  Telephone Calls to Victims.  On or about the dates set forth in the table below, the following

10  defendant and others, while employed at the following boiler room/ISO and under the direction and

11  control of the following defendant(s), had an interstate telephone conversation with the following

12  victim about the following offering:

| Ct | Date | Defendant-Others Boiler Room/ISO | Direction/Control | Victim City/State | Offering |
|----|------|----------------------------------|-------------------|-------------------|----------|
| 2 | 05/01/96 | Salesperson TWCCI | SHIELDS, HART McCLAFFERTY | William Hudson Santee, CA | Plaza Partners |
| 3 | 05/03/96 | YORK MediaTech | EVANGELIST BOLLENBACH | William Crousore Walton, IN | Home Net |
| 4 | 05/23/96 | Salesperson TWCCI | SHIELDS, HART McCLAFFERTY | Patricia Jackson Oceanside, CA | Plaza Partners |
| 5 | 05/30/96 | YORK MediaTech | EVANGELIST BOLLENBACH | Yvonne Planque Loomis, WA | Home Net |
| 6 | 06/05/96 | SANDERS MediaTech | EVANGELIST BOLLENBACH | Bob Knott Dallas, TX | Home Net |
| 7 | 06/12/96 | Salesperson TWCCI | SHIELDS, HART McCLAFFERTY | Ming-Ching Shyu San Diego, CA | Plaza Partners |
| 8 | 06/28/96 | Salesperson TWCCI | SHIELDS, HART McCLAFFERTY | Ralph Hunt, III San Diego, CA | Plaza Partners |
| 9 | 07/17/96 | McCLAFFERTY | | Ming-Ching Shyu San Diego, CA | Plaza Partners |
| 10 | 07/19/96 | Salesperson TWCCI | SHIELDS, HART McCLAFFERTY | Patricia Jackson Oceanside, CA | Plaza Partners |
| 11 | 07/22/96 | Salesperson TWCCI | SHIELDS, HART | Roberto Cueva La Mesa, CA | I-Net Providers |

48

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 49 of 70
Case 1:07-cr-00508-PCE    Document 1-2    Filed 11/26/2007    Page 49 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 50 of 91

| Ct | Date | Defendant-Others Boiler Room/ISO | Direction/Control | Victim City/State | Offering |
|----|------|----------------------------------|-------------------|-------------------|----------|
| 12 | 08/08/96 | Salesperson TWCCI | SHIELDS, HART | Harold Beck Escondido, CA | I-Net Providers |
| 13 | 08/20/96 | Salesperson TWCCI | SHIELDS, HART | Bernard Elbinger Oceanside, CA | I-Net Providers |
| 14 | 09/17/96 | SANDERS MediaTech | EVANGELIST BOLLENBACH | Gregory Sablic Levittown, NY | Enternet |
| 15 | 10/01/96 | Salesperson TWCCI | SHIELDS, HART | Roberto Cueva La Mesa, CA | I-Net Providers |
| 16 | 10/17/96 | Salesperson MediaTech | EVANGELIST BOLLENBACH | Arnold Horton Moab, UT | Enternet |
| 17 | 11/14/96 | Salesperson ALD | EVANGELIST BOLLENBACH | Charles Bernreuter Jacksonville, FL | Enternet |
| 18 | 12/22/96 | YORK ALD | EVANGELIST BOLLENBACH | Doris Soape Pasadena, TX | Enternet |
| 19 | 01/10/97 | Salesperson ALD | EVANGELIST BOLLENBACH | Kenneth Balbach Evansville, IN | Enternet |
| 20 | 01/22/97 | YORK ALD | EVANGELIST BOLLENBACH | Doralene Niedfelt Grand Island, NE | Enternet |
| 21 | 02/10/97 | YORK ALD | EVANGELIST BOLLENBACH | Edith Marion Atlanta, GA | Enternet |
| 22 | 02/16/97 | YORK ALD | EVANGELIST BOLLENBACH | Frank Fila West Springfield, MA | Enternet |
| 23 | 02/21/97 | SANDERS ALD | EVANGELIST BOLLENBACH | Janeale Walker Lewisville, ID | Enternet |

b. <u>Telephone Calls to Cooperating Witnesses</u>. On or about the dates set forth in the table below, the following defendant and others, while employed at the following boiler room/ISO and under the direction and control of the following defendant(s), had an interstate telephone conversation with the following cooperating witness (hereinafter "CW") about the following offering:

| Ct | Date | Defendant-Others Boiler Room/ISO | Direction/Control | CW | Offering |
|----|------|----------------------------------|-------------------|-----|----------|
| 24 | 05/29/96 | Salesperson VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | Plaza Partners |

Case 3:08-cr-07016-BTM   Document 1-2   Filed 03/21/2008   Page 50 of 70
Case 1:07-cr-00598-PCE   Document 1-2   Filed 11/26/2007   Page 50 of 70
Case 3:01-cr-01415-BTM   Document 1   Filed 04/27/2001   Page 51 of 91

| Ct | Date | Defendant-Others Boiler Room/ISO | Direction/Control | CW | Offering |
|----|------|----------------------------------|-------------------|-----|----------|
| 25 | 06/04/96 | Salesperson VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | Plaza Partners |
| 26 | 06/05/96 | Salesperson VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | Plaza Partners |
| 27 | 06/11/96 | Salesperson VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | Plaza Partners |
| 28 | 06/13/96 | Salesperson VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | Plaza Partners |
| 29 | 06/14/96 | Salesperson VOH | SHIELDS, HART McCLAFFERTY SHEHYN | CW-1-KS | Plaza Partners |
| 30 | 06/14/96 | SHEHYN VOH | SHIELDS, HART McCLAFFERTY | CW-1-KS | Plaza Partners |
| 31 | 07/16/96 | Salesperson VOH | SHIELDS, HART SHEHYN | CW-1-KS | I-Net Providers |
| 32 | 07/17/96 | Salesperson VOH | SHIELDS, HART SHEHYN | CW-1-KS | I-Net Providers |
| 33 | 07/25/96 | Salesperson VOH | SHIELDS, HART SHEHYN | CW-1-KS | I-Net Providers |
| 34 | 08/02/96 | SHEHYN VOH | SHIELDS, HART | CW-1-KS | I-Net Providers |
| 35 | 08/20/96 | SHEHYN VOH | SHIELDS, HART | CW-1-KS | I-Net Providers |
| 36 | 09/26/96 | Salesperson TWCCI | SHIELDS, HART | CW-1-KS | I-Net Providers |
| 37 | 10/02/96 | Salesperson TWCCI | SHIELDS, HART | CW-1-KS | I-Net Providers |

All in violation of Title 18, United States Code, Sections 1343 and 2, and which offenses were committed in connection with the conduct of telemarketing, as set forth in Title 18, United States Code, Section 2325.

//

//

50

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 51 of 70
Case 1:07-cr-00598-PCF    Document 1-2    Filed 11/26/2007    Page 51 of 70
Case 3:07-cr-01415-BTM    Document 1-2    Filed 04/27/2007    Page 52 of 91

**Counts 38 through 66**

[Title 18, U.S.C., Sec. 1341 - Mail Fraud]
[Title 18, U.S.C., Sec. 2 - Aiding and Abetting]
[All Defendants]

1. On or about the dates set forth below, within the Southern District of California and elsewhere, defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA, SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND, JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS, RICHARD YORK, and the persons listed as "charged elsewhere" in paragraph 3 of the Introductory Allegations, and others known and unknown to the grand jury knowingly and willfully devised and intended to devise a scheme and artifice to defraud investors, as identified below, and to obtain money from said victims by means of materially false and fraudulent pretenses, representations, and promises and by intentional concealment and omission of material facts.

**The Scheme and Artifice to Defraud**

2. The Introductory Allegations and Paragraphs 5 through 7 of Count 1 are realleged and reasserted as if set forth in full herein.

**Execution of the Scheme by Mail or Private, Commercial Interstate Carrier**

3. On or about the dates alleged below, within the Southern District of California, and elsewhere, defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA, SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND, JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS, RICHARD YORK, and the

51

1  persons listed as "charged elsewhere" in paragraph 3 of the Introductory Allegations, for the purpose

2  of executing the aforesaid scheme and artifice to defraud, and attempting to do so, knowingly and

3  willfully caused to be delivered by mail by the United States Postal Service (hereinafter "USPS") and

4  by private, commercial interstate carrier such as Federal Express (hereinafter "FedX"), for delivery

5  according to the directions thereon, envelopes containing mail matter (hereinafter "mail") such as

6  checks (hereinafter "CK") and correspondence/documents (hereinafter "CD") addressed to and from,

7  as set forth below, to (a) victims and (b) cooperating witnesses (hereinafter "CW") who were posing

8  as victims and who reside in the Southern District of California, as specifically described in Counts 38

9  through 66 below:

10      a. <u>Mailings To or From Victims.</u>

11      (1) On or about the dates set forth in the table below, a salesperson at TWCCI, while under

12  the direction and control of defendants SHIELDS, HART and McCLAFFERTY, caused the following

13  victims to mail the following mail matter to 6239 Edgewater Drive, Bldg. E, Suite 6, Orlando, Florida

14  32810, relating to the Plaza Partners offering:

| Ct | Date | Victim, City/State | Mail | Via |
|----|------|--------------------|------|-----|
| 38 | 05/08/96 | William Hudson, Santee, CA | CD | FedX |
| 39 | 06/13/96 | Ming-Ching Shyu, San Diego, CA | CK | FedX |
| 40 | 07/19/96 | Ming-Ching Shyu, San Diego, CA | CK | FedX |
| 41 | 07/19/96 | Patricia Jackson, Oceanside, CA | CD | FedX |

20      (2) On or about the dates set forth in the table below, a salesperson at TWCCI, while under

21  the direction and control of defendants SHIELDS and HART, caused the following victims to mail the

22  following mail matter to the following addresses: (a) 6239 Edgewater Drive, Bldg. E, Suite 6, Orlando,

23  Florida 32810, or (b) 501 North Orlando, Ave., #313-160, Winter Park, Florida 32789, relating to the

24  I-Net Providers offering:

| Ct | Date | Victim, City/State | Mail | Sent To | Via |
|----|------|--------------------|------|---------|-----|
| 42 | 08/09/96 | Harold Beck, Escondido, CA | CD, CK | (a) | FedX |
| 43 | 08/29/96 | Bernard Elbinger, Oceanside, CA | CD, CK | (a) | FedX |
| 44 | 10/02/96 | Roberto Cueva, La Mesa, CA | CD, CK | (b) | USPS |

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 53 of 70
Case 3:01-cr-00698-BTM    Document 1-2    Filed 11/26/2007    Page 53 of 70
Case 3:01-cr-09415-BTM    Document 1-2    Filed 04/27/2001    Page 54 of 91

| Ct | Date | Victim, City/State | Mail | Sent To | Via |
|----|------|--------------------|------|---------|-----|
| 45 | 10/16/96 | Lea Leccese, San Diego, CA | CD, CK | (b) | FedX |

(3)    On or about the dates set forth in the table below, a salesperson at ALD, while under the direction and control of defendants EVANGELIST and BOLLENBACH, caused the following victims to mail via FedX the following mail matter to the following addresses: (a) 7825 Fay Avenue, La Jolla, California 92037, (b) 19528 Ventura Blvd., Suite 332, Tarzana, California 91356, (c) 18375 Ventura Blvd., Suite 514, Tarzana, California 91356, or (d) 18834 Ventura Blvd., Suite 154 Encino, California 91316, relating to the following offerings:

| Ct | Date | Victim, City/State | Mail | Sent To | Offering |
|----|------|--------------------|------|---------|----------|
| 46 | 11/18/96 | Arnold Horton, Moab, UT | CD | (a) | Enternet |
| 47 | 02/13/97 | Margaret Brown-Ball, Encinitas, CA | CD, CK | (b) | Enternet |
| 48 | 02/14/97 | Linda & Daniel Brown, Del Mar, CA | CK | (b) | Enternet |
| 49 | 04/03/97 | Frank Gonsalves, Encinitas, CA | CK | (c) | ConnectKom |
| 50 | 06/11/97 | Lawrence Zonker, Rancho Santa Fe, CA | CK | (d) | Intellicom |

(4)    On or about the dates set forth in the table below, a salesperson at (a) TWCCI, while under the direction and control of defendants SHIELDS and HART, or (b) at ALD, while under the direction and control of defendants EVANGELIST and BOLLENBACH, caused to be mail via (c) USPS or (d) FedX, the following mail matter to the following victims, relating to the following offerings:

| Ct | Date | ISO | Victim, City/State | Mail | Via | Offering |
|----|------|-----|--------------------|------|-----|----------|
| 51 | 08/21/96 | (a) | Ralph Hunt III, San Diego, CA | CD | USPS | I-Net Providers |
| 52 | 10/17/96 | (b) | John Wilkinson, Burlingame, CA | CD | USPS | Enternet |
| 53 | 03/07/97 | (b) | Margaret Brown-Ball, Encinitas, CA | CD | USPS | Enternet |
| 54 | 04/01/97 | (b) | Frank Gonsalves, Encinitas, CA | CD | FedX | ConnectKom |

b. <u>Mailings To Cooperating Witnesses</u>.

(1)    On or about the dates set forth in the table below, a salesperson at VOH, while under the direction and control of defendants SHIELDS, HART and SHEHYN, or MediaTech, while under the

53

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 54 of 70

Case 1:07-cr-00598-PGE    Document 1-2    Filed 11/26/2007    Page 54 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001    Page 58 of 91

1  direction and control of defendants EVANGELIST and BOLLENBACH, caused to be mailed, via

2  FedX, a glossy brochure, legal memorandum, signature documents and other promotional materials to

3  the following CWs, relating to the following offerings.

| Ct | Date | Salesperson at | CW | Mail | Offering |
|----|------|----------------|-----|------|----------|
| 55 | 07/19/96 | VOH | CW-1-KS | CD | I-Net Providers |
| 56 | 09/27/96 | MediaTech | CW-1-KS | CD | Enternet |

7       (2)    On or about the dates set forth in the table below, defendants ROBINSON and

8  DIAMAND, while salespersons at Granite and under the direction and control of T. Grayson, caused

9  to be mailed, via FedX, a glossy brochure, legal memorandum, signature documents and other

10  promotional materials (hereinafter "promo. materials") or a promotional videotape (hereinafter "promo.

11  videotape") to the following CWs, relating to the following offerings.

| Ct | Date | Defendant | CW | Mail | Offering |
|----|------|-----------|-----|------|----------|
| 57 | 10/30/96 | ROBINSON | CW-1-KS | Promo. Materials | Enternet |
| 58 | 01/30/97 | DIAMAND | CW-3-PC | Promo. Materials | Enternet |
| 59 | 03/19/97 | DIAMAND | CW-3-PC | Promo. Materials | ConnectKom |
| 60 | 05/06/97 | DIAMAND | CW-3-PC | Promo. Materials | Intellicom |
| 61 | 05/09/97 | DIAMAND | CW-1-KS | Promo. Materials | Intellicom |
| 62 | 05/13/97 | DIAMAND | CW-3-PC | Promo. Videotape | Intellicom |
| 63 | 06/17/97 | DIAMAND | CW-1-KS | Promo. Videotape | Intellicom |

20       (3)    On or about the dates set forth in the table below, defendant SANDERS, while a

21  salesperson at ALD and under the direction and control of defendants EVANGELIST and

22  BOLLENBACH, caused to be mailed, via FedX, promo. materials to the following CWs, relating to

23  the following offerings.

| Ct | Date | CW | Offering |
|----|------|-----|----------|
| 64 | 05/20/97 | CW-1-KS | Intellicom |
| 65 | 05/29/97 | CW-2-SF | Intellicom |

27       (4)    On or about the date set forth in the table below, defendant METOYER caused to be

28  mailed, via FedX, promo. materials to the following CW relating to the following offering.

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 55 of 70
Case 3:01-cr-00598-BGT M    Document 1-2    Filed 11/26/2007   Page 55 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001   Page 56 of 91

| Ct | Date | CW | Offering |
|---|---|---|---|
| 66 | 02/13/97 | CW-5-BE | Enternet |

All in violation of Title 18, United States Code, Sections 1341 and 2, and which offenses were committed in connection with the conduct of telemarketing, as set forth in Title 18, United States Code, Section 2325.

### Count 67

[Title 18, U.S.C., Sec. 1956(h)]
[Conspiracy to Commit Money Laundering]
[All Defendants]

1. Paragraphs 1 through 3 of the Introductory Allegations are realleged and reasserted as if set forth in full herein.

2. Beginning on or about July 1, 1994 and continuing to and including a date unknown to the grand jury, but at least until September 1, 1998, in the Southern District of California and elsewhere, the defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA, SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND, JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS, RICHARD YORK, the persons listed as "charged elsewhere" in paragraph 3 of the Introductory Allegations, and others known and unknown to the grand jury did knowingly combine, conspire, and agree with each other, and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

a.    to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, wire fraud, in violation of Title 18, United States Code, Section 1343, and securities fraud, in violation of Title 15,

1   United States Code, Section 78(j), with the intent to promote the carrying on of such specified unlawful

2   activity, and that while conducting and attempting to conduct such financial transactions, knew that the

3   property involved in the financial transactions represented the proceeds of some form of unlawful

4   activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

5         b.    to knowingly conduct and attempt to conduct financial transactions affecting interstate

6   commerce and foreign commerce, which transactions involved the proceeds of specified unlawful

7   activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, wire fraud, in

8   violation of Title 18, United States Code, Section 1343, and securities fraud, in violation of Title 15,

9   United States Code, Section 78(j), knowing that the transactions were designed in whole or in part to

10   conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified

11   unlawful activity, and that while conducting and attempting to conduct such financial transactions,

12   knew that the property involved in the financial transactions represented the proceeds of some form of

13   unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

14         c.    to transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary

15   instrument or funds involving the proceeds of specified unlawful activity, that is, mail fraud, in

16   violation of Title 18, United States Code, Section 1341, wire fraud, in violation of Title 18, United

17   States Code, Section 1343, and securities fraud, in violation of Title 15, United States Code, Section

18   78(j), from a place in the United States to or through a place outside the United States, knowing that

19   the monetary instrument or funds involved in the transportation, transmission, or transfer represented

20   the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or

21   transfer was designed in whole or in part to conceal and disguise the nature, location, source,

22   ownership, or control of the proceeds of specified unlawful activity, in violation of Title 18, United

23   States Code, Section 1956(a)(2)(B)(i).

24         d.    to knowingly conduct and attempt to conduct a financial transaction affecting interstate

25   and foreign commerce which involved the proceeds of a specified unlawful activity, that is, mail fraud,

26   in violation of Title 18, United States Code, Section 1341, wire fraud, in violation of Title 18, United

27   States Code, Section 1343, and securities fraud, in violation of Title 15, United States Code,

28   Section 78(j), knowing that the transaction was designed in whole and in part to avoid a transaction

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 57 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 57 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 58 of 91

1  reporting requirement under federal law and that while conducting and attempting to conduct such

2  financial transaction knew that the property involved in the financial transaction, that is monetary

3  instruments represented the proceeds of some form of unlawful activity, in violation of Title 18, United

4  States Code, Section 1956(a)(1)(B)(ii).

5      e.    to knowingly engage and attempt to engage, in monetary transactions by, through or to

6  a financial institution, affecting interstate and foreign commerce, in criminally derived property of a

7  value greater than $10,000, that is the deposit, withdrawal, or transfer of funds, such property having

8  been derived from a specified unlawful activity, that is: mail fraud, in violation of Title 18, United

9  States Code, Section 1341, wire fraud, in violation of Title 18, United States Code, Section 1343, and

10 securities fraud, in violation of Title 15, United States Code, Section 78(j), contrary to the provisions

11 of Title 18, United States Code, Section 1957.

12                    **Primary Purpose of the Conspiracy**

13     3. It was the purpose of the conspiracy to launder the proceeds received from the victims of the

14 scheme and artifice to defraud described in Paragraphs 5 through 7 of Count 1 and employed in

15 Counts 2 through 66 (hereinafter "the fraud described above").

16                         **Manner and Means**

17     4. The manner and means used to accomplish the objectives of the conspiracy included, among

18 others, the following:

19     a.    From July 28, 1994 to June 26, 1997, defendants LEVINE, SHOUCAIR, SHIELDS and

20 HART, and Itskowitz, Rearick, Lopuszynski, Courtney, and Reisner and others, deposited, or had

21 deposited, $49,050,378 in client funds by checks and wire transfers to the various investor bank

22 accounts located within the United States, as described in paragraph 3 of the Introductory Allegations.

23                 **Promotion: 18 U.S.C. § 1956(a)(1)(A)(i)**

24     b.    From August 2, 1994 to June 24, 1997, defendants LEVINE and SHOUCAIR and

25 Itskowitz, Rearick, Lopuszynski, Courtney, and Reisner and others, then transferred $43,050,623.49

26 in said client funds by checks and wire transfers to the various operating accounts for the above-

27 referenced offerings, which were located within the United States, as described in paragraph 3 of the

28 Introductory Allegations.

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 58 of 70
Case 1:07-cr-00598-PGE    Document 1-2    Filed 11/26/2007    Page 58 of 70
Case 3:61-cr-07415-BTM    Document 1-2    Filed 04/27/2001    Page 59 of 91

c.    Defendants LEVINE and SHOUCAIR, and Itskowitz, Rearick, Lopuszynski, Courtney and Green and others transferred, by check and wire transfers, the following amounts to the boiler rooms/ISOs operated by the defendants and others set forth below, for the purpose of promoting the fraud described above during the dates set forth below:

| Defendant(s) | Dates | Amount | ISO |
|---|---|---|---|
| SHOUCAIR Engelhardt | 10/20/94-05/16/96 | $2,777,680.88 | Madison, Tower, Venture One |
| SHIELDS, HART SHEHYN | 06/19/95-10/30/96 | $9,771,645.75 | Capital Link, TWCCI |
| EVANGELIST BOLLENBACH | 11/22/94-06/26/97 | $3,732,768.07 | Livestock, MediaTech, ALD |
| MORRIS | 11/04/94-06/26/97 | $3,547,614.56 | Lion's Share, Selective Network, Perspective |
| GRAYSON | 07/11/96-06/12/97 | $ 251,670,00 | Money Makers |
| MARFOGLIA | 09/12/96-05/27/97 | $ 174,763.00 | New Age |
| METOYER | 10/11/96-04/17/97 | $  57,188.00 | FMG, Dealmakers M-III Associates |
| T. Grayson | 10/27/94-06/26/97 | $3,527,498.74 | Brookside, Granite |

d.    Between February 13, 1996 and June 13, 1997, defendants LEVINE, SHOUCAIR, SHIELDS and HART, and Itskowitz, Rearick, Lopuszynski, and Courtney and others transferred $192,439.88 in recruiting fees by check and wire transfers to defendant McCLAFFERTY for the purpose of promoting the fraud described above.

e.    Between the dates set forth below, defendants LEVINE and SHOUCAIR, and Itskowitz, Rearick, Lopuszynski, and Courtney disbursed funds to the various boiler rooms/ISOs which the boiler rooms/ISOs then disbursed by means of check and wire to salespersons who sold the offerings described on the dates and in the amounts set forth below, for the purpose of promoting the fraud described above.

| Defendant/Others Disbursing Funds | Boiler Room/ISO | Dates | Defendant Receiving | Amount Disbursed |
|---|---|---|---|---|
| T. Grayson | Brookside, Granite | 12/30/94-06/20/97 | DIAMAND | $867,667.00 |

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 59 of 70
Case 1:07-cr-00598-PCF    Document 1-2    Filed 11/26/2007    Page 59 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001    Page 60 of 91

| Defendant/Others Disbursing Funds | Boiler Room/ISO | Dates | Defendant Receiving | Amount Disbursed |
|---|---|---|---|---|
| MORRIS | Selective, Networld Perspective | 12/22/95-06/20/97 | RISSMILLER | $252,344.05 |
| EVANGELIST BOLLENBACH | Livestock MediaTech, ALD | 03/29/96-06/20/97 | CASTRIOTTA | $183,490.00 |
| MORRIS | Selective, Networld Perspective | 02/17/95-05/09/97 | JACONSKI | $153,829.71 |
| T. Grayson | Brookside, Granite | 05/26/95-06/20/97 | ROBINSON | $126,139.00 |
| EVANGELIST BOLLENBACH | Livestock MediaTech, ALD | 03/24/95-05/30/97 | SANDERS | $102,550.00 |
| EVANGELIST BOLLENBACH | Livestock MediaTech, ALD | 12/02/94-06/20/97 | YORK | $144,864.50 |

## Concealment: 18 U.S.C. §§ 1956(a)(1)(B)(i) and (a)(2)(B)(i)

5. It was part of the conspiracy to defraud and among the manner and means used to execute it that:

a. From on or about October 19, 1994 to on or about February 6, 1997, defendants LEVINE and SHOUCAIR, and Itskowitz, Rearick, Lopuszynski, Courtney and Reisner and others, transferred $6,429,738.37 by checks and wire transfers from the investors operating accounts referenced above to nominee accounts located within the United States, including the entities known as Frontline Consulting and World Net Consulting, in order to prevent the Securities and Exchange Commission, the Federal Trade Commission and the Department of the Treasury from determining the true promoters of the offerings in order to conceal specific monies each defendant received from the fraud described above.

b. Defendants LEVINE, SHOUCAIR, SHIELDS, HART, EVANGELIST, BOLLENBACH, MORRIS, METOYER, SHEHYN, DIAMAND, RISSMILLER, CASTRIOTTA, JACONSKI, SANDERS and YORK and Itskowitz, Rearick, Lopuszynski, Courtney, T. Grayson and Reisner and others, transferred funds by checks and wire transfers to nominee accounts located within the United States, including transfers to the accounts of family members and the client trust accounts of defendant LEONARD and Wellman, on the dates, in amounts and to the entities set forth below, to conceal specific monies each defendant received from the fraud described above:

59

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 60 of 70
Case 1:07-cr-00588-PCF    Document 1-2    Filed 11/26/2007    Page 60 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001    Page 61 of 91

## Transfers to Family Members

| Defendant-Others | Dates | Amount | How Negotiated |
|---|---|---|---|
| LEVINE | 08/10/95-02/20/96 | $400,000 | Deposits into nominee accounts, including names of family members |
| Rearick | 07/25/96-11/12/96 | $277,011 | Issued checks to nominee accounts, including family members |

## Transfers to Attorneys

| Defendant-Others | Dates | Amount | How Negotiated |
|---|---|---|---|
| LEVINE | 12/04/96-02/26/97 | $110,521 | Deposits of checks into client trust account of defendant LEONARD |
| Itskowitz | 02/26/96-03/27/97 | $469,331 | Deposits of checks into client trust account of defendant LEONARD ($371,811) and Wellman ($97,500) |
| Rearick | 05/10/95-11/04/96 | $449,000 | Deposits of checks into client trust account of defendant LEONARD ($312,000) and Wellman ($137,000) |

## Transfers to or by Nominee Corporate & "dba" Accounts

| Defendant-Others | Dates | Amount | How Negotiated |
|---|---|---|---|
| SHOUCAIR | 01/30/95-08/13/96 | $674,766 | Issued checks payable to Arctype, includes deposits to Arctype for $395,438 |
| SHOUCAIR | 09/13/96-12/04/96 | $143,000 | Deposits into Viotech account |
| SHOUCAIR | 10/30/96 | $ 6,000 | Deposit into Leads R Us account |
| SHIELDS, HART | 07/25/96 | $ 40,000 | Wire transfer into Capco Unlimited account |
| EVANGELIST | 12/07/94-06/20/97 | $665,559 | Deposits into CFS and Microshop accounts |
| METOYER | 10/11/96-04/12/97 | $ 57,188 | Negotiation of checks payable to Dealmakers, FMG and M-III Associates |
| SHEHYN | 05/08/95-10/25/95 | $ 13,247.02 | Deposits into Meridian accounts |
| DIAMOND | 01/19/95-06/20/97 | $845,577 | Deposits into Velocity Pacific and Diamond Interactive |
| MORRIS RISSMILLER | 05/16/97-06/20/97 | $ 9,990.27 | Issued checks to Ticket Stubs |

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 61 of 70
Case 1:07-cr-00598-PCF    Document 1-2    Filed 11/26/2007    Page 61 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 62 of 91

| Defendant-Others | Dates | Amount | How Negotiated |
|---|---|---|---|
| EVANGELIST BOLLENBACH CASTRIOTTA | 09/10/96-06/20/97 | $114,990 | Issued checks payable to Big Shot |
| MORRIS JACONSKI | 06/06/97-06/20/97 | $   4,862 | Issued checks payable to Carpe Diem |
| EVANGELIST BOLLENBACH SANDERS | 03/24/95-05/30/97 | $100,050 | Issued checks payable to Spartan Realty and Spartan International |
| EVANGELIST BOLLENBACH YORK | 02/17/95-05/26/95 | $ 35,514.50 | Issued checks payable to Azimut |
| Lopuszynski Courtney | 07/12/95-11/20/95 | $641,500 | Deposits to Ultravision account including $82,000 from Link 900 offering |
| Courtney | 12/04/95-12/09/96 | $731,547.23 | Negotiated checks to Telemax and Frontier accounts (including $326,452.23 from Plaza Partners and I-Net Providers offerings) |

**Transfers to Trusts**

| Defendant-Others | Dates | Amount | How Negotiated |
|---|---|---|---|
| DIAMOND | 01/27/97-05/30/97 | $114,500 | Deposits to Foundation account |
| T. Grayson | 09/22/95-12/21/95 | $ 89,022 | Deposits to King Family Trust account |

c.    Defendants LEVINE, SHOUCAIR, LEONARD, MORRIS, and Itskowitz, T. Grayson and others, transferred funds by check or wire transfer to nominee accounts, some of which were located in foreign countries, including transfers from the above-described accounts of the client trust accounts of defendant LEONARD, on the dates, in the amounts and to the entities set forth below, to conceal specific monies each defendant received from the fraud described above:

| Defendant | Dates | Amount | How Transferred |
|---|---|---|---|
| LEVINE SHOUCAIR Itskowitz | 02/11/97-06/26/97 | $567,601 | Wire transfer from investor accounts to "SkyTel," "Stingray," & "Raheem" accounts |
| LEVINE | 12/08/97 | $496,116.28 | Wire transfer from Smith Barney via Chase Manhattan Bank to Royal Bank of Canada |
| LEVINE | 12/08/97 | $496,116.28 | Wire transfer from Royal Bank of Canada to foreign account in Turks & Caicos Islands |

61

Case 3:08-cr-07016-BTM   Document 1-2   Filed 03/21/2008   Page 62 of 70
Case 3:01-cr-00698-BEN   Document 1-2   Filed 11/26/2007   Page 62 of 70
Case 3:01-cr-00415-BTM   Document 1-2   Filed 04/27/2001   Page 63 of 91

| Defendant | Dates | Amount | How Transferred |
|---|---|---|---|
| LEVINE LEONARD | 01/22/97-02/28/97 | $104,612 | Wire transfer from defendant LEONARD client trust to Grand Caymans account |
| SHOUCAIR | 09/13/96 | $ 15,000 | Wire transfer from investors account to Miller & Simon Trust account in Turks & Caicos Islands |
| MORRIS | 04/14/97-07/22/97 | $ 85,000 | Wire transfer from ISO accounts to Top Comm. account in Hong Kong |

d.      From on or about April 7, 1997 to on or about April 13, 1997, defendants LEVINE and SHOUCAIR, and Itskowitz and Reisner and others, negotiated checks payable to cash, totaling $27,500, from the CONNECTKOM investor operating account referenced above, in order to conceal specific monies each defendant received from the fraud described above.

e.      From on or about November 19, 1996 to on or about November 25, 1996, defendant LEVINE caused Courtney to transfer $54,655 by wire transfers from the investor operating account referenced above to Courtney's nominee account in the name of Frontier, and then to defendant LEVINE, in order to conceal specific monies each defendant received from the fraud described above.

f.      Between on or about April 17, 1996 and on or about June 26, 1997, defendant LEONARD provided false and fraudulent documentation to T. Grayson to establish an off-shore account in the Cook Islands at Barclays Bank to conceal specific monies each defendant received from the fraud described above.

**Avoidance of Reporting Requirement: 18 U.S.C. § 1956(a)(1)(B)(ii)**

6. Defendants LEVINE, SHOUCAIR and LEONARD, and Itskowitz, Rearick, Lopuszynski, Courtney, Reisner and Wellman and others, converted funds to currency in amounts of less than $10,000, on the dates, in the manner and in the amounts set forth below, to avoid Currency Transaction Reports from being completed by financial institutions:

| Defendant-Others | Dates | Amount | How Negotiated For Currency |
|---|---|---|---|
| LEVINE | 09/12/95-11/01/96 | $333,395 | Negotiated from bank withdrawals |
| SHOUCAIR | 11/28/95-02/06/97 | $180,900 | Negotiated from bank withdrawals |

62

| Defendant-Others | Dates | Amount | How Negotiated For Currency |
|---|---|---|---|
| LEONARD Itskowitz | 12/04/95-02/28/97 | $476,500 | Negotiated client trust account checks |
| Itskowitz Wellman | 11/28/95-05/03/96 | $149,000 | Negotiated checks from client trust account |
| Itskowitz | 03/30/95-10/24/96 | $329,840 | Converted commission checks |
| Rearick | 12/30/94-09/13/96 | $333,917.50 | Converted commission checks |
| Lopuszynski | 03/29/95-05/24/95 | $ 26,250 | Converted commission payments |
| Courtney | 05/10/95-09/12/96 | $296,880 | Converted commission payments |

## Engaging In An Illegal Monetary Transaction: 18 U.S.C. § 1957

7. It was further part of the conspiracy that between on or about October 12, 1994 and on or about September 4, 1998, defendants LEVINE, SHOUCAIR, LEONARD, McCLAFFERTY, EVANGELIST, BOLLENBACH, MORRIS, DIAMOND, and RISSMILLER, and Itskowitz, Rearick, Lopuszynski, Courtney, Reisner, Engelhardt, Widmer, Slaton, Nachamkin, Perelman, T. Grayson, Wellman, and Green, knowingly engaged, and attempted to engage, in monetary transactions by, through or to various financial institutions, affecting interstate and foreign commerce, in property of values greater than $10,000.00, derived from fraud described above, including the deposit, withdrawal, or transfer of funds. All in violation of Title 18, United States Code, Section 1956(h).

//
//
//
//
//
//
//
//
//

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 64 of 70
Case 1:07-cr-00598-PCF    Document 1-2    Filed 11/26/2007    Page 64 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001    Page 66 of 91

**Counts 68 through 78**

[Title 18 U.S.C., Sec. 1956(a)(1)(A)(i) - Money Laundering (Promotion)]
[Title 18, U.S.C., Sec. 2 - Aiding and Abetting]
[All Defendants]

1. Paragraph 1 through 3 of the Introductory Allegations are realleged and reasserted as if set forth in full herein.

2. On or about the dates listed below, within the Southern District of California and elsewhere, knowing that the property detailed below represented the proceeds of some form of unlawful activity, defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA, SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND, JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS, RICHARD YORK, and the persons listed as "charged elsewhere" in paragraph 3 of the Introductory Allegations, and others known and unknown to the grand jury, as set forth below, conducted and attempted to conduct the below listed financial transactions affecting interstate and foreign commerce which involved the proceeds of specified unlawful activity, that is mail fraud, wire fraud, and securities fraud, with the intent to promote the carrying on of said specified unlawful activity:

//

//

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 65 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 65 of 70
Case 3:01-cr-01415-BTM    Document 1-2    Filed 04/27/2001    Page 66 of 91

| Count | Transferring Defendant(s) | Receiving Defendant(s) | Date | Financial Transaction |
|---|---|---|---|---|
| 68 | EVANGELIST BOLLENBACH | SANDERS | 06/14/96 | Negotiation of MediaTech check #1158 for $7,000 to Spartan Realty |
| 69 | LEVINE SHOUCAIR | EVANGELIST BOLLENBACH | 08/01/96 | Wire transfer for $86,085 from World Net Dev. Union Bank Acct #1290020014 to Bank of America MediaTech Acct #380212498 |
| 70 | EVANGELIST BOLLENBACH | BOLLENBACH | 11/14/96 | Negotiation of ALD check #130 for $14,780 |
| 71 | EVANGELIST BOLLENBACH | EVANGELIST | 11/15/96 | Negotiation of MediaTech check #131 for $15,130.05 to Microshop |
| 72 | EVANGELIST BOLLENBACH | CASTRIOTTA | 11/27/96 | Negotiation of ALD Check #148 for $9,000 to Big Shot |
| 73 | LEVINE SHOUCAIR | EVANGELIST BOLLENBACH | 12/24/96 | Wire transfer for $65,611 from Enternet 2000 Union Bank Acct #1290022580 to ALD Wells Fargo Bank Acct #0849523261 |
| 74 | LEVINE SHOUCAIR | EVANGELIST BOLLENBACH | 03/28/97 | Wire transfer for $58,384 from ConnectKom Union Bank Acct #1290035216 to ALD Wells Fargo Bank Acct #0849523261 |
| 75 | EVANGELIST BOLLENBACH | BOLLENBACH | 05/09/97 | Negotiation of ALD check #534 for $12,268 |
| 76 | EVANGELIST BOLLENBACH | EVANGELIST | 05/09/97 | Wire transfer for $12,403 ALD Wells Fargo Bank Acct #0849523261 to Microshop Dean Witter Acct #065203492003 |
| 77 | LEVINE SHOUCAIR | EVANGELIST BOLLENBACH | 06/19/97 | Wire transfer for $53,349 from Intellicom Santa Monica Bank Acct #0006060323 to ALD Wells Fargo Bank Acct #0849523261 |
| 78 | EVANGELIST BOLLENBACH | YORK | 06/20/97 | Negotiation of ALD check #653 for $12,500 to Azimut - Richard YORK |

Case 3:08-cr-07016-BTM   Document 1-2   Filed 03/21/2008   Page 66 of 70
Case 1:07-cr-00598-PGF   Document 1-2   Filed 11/26/2007   Page 66 of 70
Case 3:01-cr-01415-BTM   Document 1   Filed 04/27/2001   Page 67 of 91

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### Counts 79 and 80

[Filing a False Tax Return – 26 U.S.C. Sec. 7206(1)]
[Defendant EUGENE DONALD EVANGELIST, JR.]

On or about the dates set forth below, defendant EUGENE DONALD EVANGELIST, JR., in the Southern District of California and elsewhere, did willfully make and subscribe a false U.S. Individual Income Tax Return, Form 1040, for the year stated, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said return the defendant did not believe to be true and correct as to every material matter, in that said return falsely reported defendant's total income on line 22 of the return to be the amount set forth below, which defendant EUGENE DONALD EVANGELIST, JR. then and there well knew and believed was a false and substantially understated amount.

| Count | Date | Tax Year | False Amount |
|-------|------|----------|--------------|
| 79 | 10/30/97 | 1995 | $44,997.00 |
| 80 | 11/10/97 | 1996 | $44,251.00 |

All in violation of Title 26, United States Code, Section 7206(1).

### Counts 81 through 83

[Filing a False Tax Return – 26 U.S.C. Sec. 7206(1)]
[Defendant EUGENE DONALD EVANGELIST, JR.]

On or about dates set forth below, defendant EUGENE DONALD EVANGELIST, JR., in the Southern District of California and elsewhere, did willfully make and subscribe a false U.S. Corporation Income Tax Return, Form 1120-A, for the year and in the name of the corporation set forth below, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said return the defendant did not believe to be true and correct as to every material matter, in that said return falsely reported as the annual gross receipts of the respective corporation., on line 1c of the return, which defendant EUGENE DONALD EVANGELIST, JR. then and there well knew and believed was false in that the claimed receipts of the respective corporation, constituted individual income of defendant for the tax year set forth below.

//

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 67 of 70
Case 3:01-cr-00598-BTM    Document 1-2    Filed 11/26/2007    Page 67 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 68 of 91

| Count | Date | Tax Year | Corporation | False Amount |
|---|---|---|---|---|
| 81 | 04/10/96 | 1995 | Cable Financial Services, Inc. | $360,045.00 |
| 82 | 04/14/97 | 1996 | Cable Financial Services, Inc. | $ 22,064.00 |
| 83 | 04/10/97 | 1996 | Microshop, Inc. | $166,640.00 |

All in violation of Title 26, United States Code, Section 7206(1).

### Counts 84 through 86

[Tax Evasion – 26 U.S.C. Sec. 7201]
[Defendant KENT BOLLENBACH]

During the calendar year set forth below, defendant KENT BOLLENBACH had and received substantial taxable income on which he owed to the United States of America a substantial income tax. Well-knowing and believing that he had taxable income and a tax due and owing, defendant KENT BOLLENBACH, in the Southern District of California and elsewhere, did willfully attempt to evade and defeat this income tax due and owing by him to the United States of America for the calendar year set forth below, by failing to file an income tax return on or before April 15th of the year following the calendar year set forth below, as required by law, to any proper officer of the Internal Revenue Service, failing to pay to the Internal Revenue Service the income tax due and owing, and committing the following affirmative acts of evasion, the likely effect of each of which would be to mislead or conceal his true and correct income and taxes due thereon from proper officers of the United States of America, to wit, (1) the conversion of commission checks to currency, (2) the extensive use of currency, and (3) the making of false statements to the office manager of Livestock/MediaTech/ALD.

| Count | Tax Year | Due Date of Return |
|---|---|---|
| 84 | 1995 | April 15, 1996 |
| 85 | 1996 | April 15, 1997 |
| 86 | 1997 | April 15, 1998 |

All in violation of Title 26, United States Code, Section 7201.

//
//
//

67

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 68 of 70
Case 1:07-cr-00598-PCE    Document 1-2    Filed 11/26/2007    Page 68 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 69 of 91

## Criminal Forfeiture Allegation 1

### [Title 18, U.S.C., Sec. 982(a)(1) and Title 18, U.S.C., Sec. 1956(h)]
#### [All Defendants]

1. Paragraphs 1 through 3 of the Introductory Allegations and paragraphs 1 through 7 of Count 67 are realleged and reasserted as if set forth in full herein.

2. As a result of the commission of the foregoing offenses alleged in Count 67 of this Indictment, defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES MICHAEL LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK DARREN McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH, BRENT DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA, SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND, JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS and RICHARD YORK shall forfeit to the United States any and all property, real or personal, involved in the offense charged, or any property traceable therefrom, including but not limited to approximately $43,050,378.00, for which the defendants are jointly and severally liable, in that such sums constitute the property involved in the criminal violations alleged above, or is property traceable therefrom; in violation of Title 18, United States Code, Section 982(a)(1).

### SUBSTITUTE ASSETS

If any of the above-described forfeitable property alleged in Criminal Forfeiture Allegation 1 of the Indictment, as a result of any act or omission of the defendants: (1) cannot be located upon the exercise of due diligence; (2) has been transferred or sold to, or deposited with, a third person; (3) has been placed beyond the jurisdiction of the Court; (4) has been substantially diminished in value; or (5) has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) - made applicable by Title 18, United States Code, Section 982(a)(1) - to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

//

Case 3:08-cr-07016-BTM    Document 1-2    Filed 03/21/2008    Page 69 of 70
Case 1:07-cr-00598-PCF    Document 1-2    Filed 11/26/2007    Page 69 of 70
Case 3:01-cr-01415-BTM    Document 1    Filed 04/27/2001    Page 70 of 91

1  All in violation of Title 18, United States Code, Section 982 and Title 21, United States Code, Section

2  853.

3  ### Criminal Forfeiture Allegation 2

4  [Title 18, U.S.C., Sec. 982(a)(1) and Title 18, U.S.C., Sec. 1956(a)(1)(A)(i)]
   [All Defendants]

5
6  1. Paragraphs 1 through 3 of the Introductory Allegations and Counts 68 through 78 are realleged

7  and reasserted as if set forth in full herein.

8  2. As a result of the commission of the foregoing offenses alleged in Counts 68 through 78 of this

9  Indictment, defendants MARC DAVID LEVINE, JONATHAN EDWARD SHOUCAIR, JAMES

10  MICHAEL LEONARD, ROBERT HARRY SHIELDS, ROBERT TERRANCE HART, MARK

11  DARREN McCLAFFERTY, EUGENE DONALD EVANGELIST, JR., KENT BOLLENBACH,

12  BRENT DOUGLAS MORRIS, MICHAEL OWEN GRAYSON, JOSEPH ANTHONY MARFOGLIA,

13  SYLVAN MORGAN METOYER, III, RODNEY SCOTT SHEHYN, DAVID ZEIDEL DIAMAND,

14  JAMES THOMAS RISSMILLER, ANTHONY MATTHEW CASTRIOTTA, MARK ALLEN

15  JACONSKI, STEPHEN JAMES ROBINSON, DANIEL SANDERS and RICHARD YORK shall

16  forfeit to the United States any and all property, real or personal, involved in the offense charged, or

17  any property traceable therefrom, including but not limited to approximately $346,510.05, for which

18  the defendants are jointly and severally liable, in that such sums constitute the property involved in the

19  criminal violations alleged above, or is property traceable therefrom; in violation of Title 18, United

20  States Code, Section 982(a)(1).

21  3. The notice of the intent of the United States to seek substitute assets set forth in Criminal

22  Forfeiture Allegation 1 is realleged and reasserted as if set forth in full herein.

23  //

24  //

25  //

26  //

27  //

28  //

Case 3:08-cr-07016-BTM   Document 1-2   Filed 03/21/2008   Page 70 of 70
Case 1:07-cr-00598-PCE   Document 1-2   Filed 11/26/2007   Page 70 of 70

Case 3:01-cr-01415-BTM   Document 1   Filed 04/27/2001   Page 71 of 91

1    All in violation of Title 18, United States Code, Section 982 and Title 21, United States Code, Section

2    853.

3      DATED: April 27, 2001.

4

5                 A TRUE BILL:

6                 Foreperson

7

8    GREGORY A. VEGA
     United States Attorney

9

10    STEVEN A. PEAK
     Assistant U.S. Attorney

11

12

13    DANNY N. ROETZEL
     Special Assistant U.S. Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28